IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MICHAEL BREWER,<br><br>Plaintiff,<br>v.<br><br>GOLDEN RULE INSURANCE COMPANY, and TOBIAS & ASSOCIATES, INC. d/b/a GETMEHEALTHCARE,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | C.A. No. 4:22-cv-00969 |

**DEFENDANT GOLDEN RULE INSURANCE COMPANY'S**
**MOTION TO DISMISS PLAINTIFF'S ORIGINAL COMPLAINT**

Defendant Golden Rule Insurance Company ("GRIC") files its motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) Plaintiff's original complaint, and states:

## I. INTRODUCTION

This is a suit for benefits under a short-term medical insurance certificate. Michael Brewer ("Plaintiff") was insured under a GRIC short-term medical insurance certificate that became effective for injuries at 12:01 on June 10, 2021, and for illnesses at 12:01 a.m. on June 15, 2021 (the "First Certificate"). The First Certificate terminated at 12:01 a.m. on December 11, 2021. Before the First Certificate terminated, Plaintiff applied for and was issued a second, short-term medical insurance certificate (the "Second Certificate"). The Second Certificate became effective on December 12, 2021. While the Second Certificate was in force, Plaintiff sought treatment for preexisting medical conditions, which GRIC denied under the preexisting condition exclusion of the Second Certificate.

Applications for both policies were solicited by Christopher Davis ("Davis"), an employee of insurance agency Tobias & Associates, Inc. ("Tobias"). On March 25, 2022, Plaintiff filed this suit, asserting that Davis told Plaintiff that the Second Certificate "would provide the same coverage" as the First Certificate, and therefore the pre-existing condition exclusion should be disregarded. [Doc. 1, ¶ 20.]. Plaintiff asserts claims against GRIC and Tobias for breach of contract, bad faith, promissory estoppel, fraud, negligent misrepresentation, and conspiracy. As set forth below in detail, Plaintiff has failed to state a claim against GRIC on which relief can be granted.

## II. FACTUAL SUMMARY[1]

### A. The First Certificate.

On June 9, 2021, Plaintiff applied for the First Certificate and requested an effective date of June 10, 2021. [Gaskey Dec., Ex. A, pp. 39-41.] Immediately above Plaintiff's signature the application included a "Statement of Understanding":

> I have read this application and represent that the information shown on it is true and complete. I understand that: . . . (2) No benefits will be paid for a health condition that exists prior to the date insurance takes effect.

[*Id.*, p. 41.]

Further, the application included a disclosure, which Plaintiff signed, regarding the plan's limitations:

[1] The facts herein are taken from Plaintiff's Original Complaint (Doc. 1), the First Certificate, and the Second Certificate. The First Certificate and Second Certificate are attached as Exhibits A and B to the Declaration of Margaret Gaskey, attached as Exhibit 1. In this regard, the Court may consider documents attached to the motion to dismiss that are referenced in the Complaint and are central to Plaintiff's claims. *See Causey v. Sewell Cadillac – Chevrolet, Inc.*, 394 F. 3d 285, 288 (5th Cir. 2004).

> This plan does not need to follow federal Affordable Care Act (ACA) rules. Unlike ACA plans, this short-term plan:
>
> - May not cover all injuries and sicknesses, including any you have before applying.
>
> ***
>
> Am I covered for an injury, illness, or disease I had before I applied for this plan (a preexisting condition)?
>
> No.
>
> - You must tell the truth when answering questions about your health.
> - We can deny claims for any injury, illness, or disease you had before signing up for this plan (whether or not you tell us about your condition).

[*Id.*, 26, 45.][2] In addition, the disclosure informed Plaintiff that open enrollment for ACA compliant plans extended from November 1, 2021 to December 15, 2021. [*Id.*, 25, 44.]

The cover letter to the Second Certificate informed Plaintiff that the First Certificate did "not offer coverage for preexisting conditions," described as "a health condition that exists before someone applies for or signs up for a new health insurance policy." [*Id.*, p. 3.] Further, the cover letter stated that, if Plaintiff needed coverage beyond the expiration date of the First Certificate, "you must reapply. Keep in mind, if you reapply, any illness or condition developed under your current plan would be considered preexisting and would not be a covered expense." [*Id.*]

The First Certificate states:

> "Preexisting condition" means an *injury* or illness for which a *covered person* received medical advice or treatment with the

[2] This notice was included in the First Certificate twice.

> 12 months immediately preceding the applicable effective date the *covered person* became insured under the *policy*.
>
> ***
>
> **PREEXISTING CONDITIONS**
>
> *Preexisting conditions*, and complications resulting from a *preexisting condition*, will not be covered under the *policy*/certificate.

[*Id.*, pp. 58, 75.] The First Certificate expired on December 11, 2021 at 12:01 a.m. [*Id.*, p. 31.]

**B. <u>The Second Certificate</u>.**

On November 5, 2021, Plaintiff applied for the Second Certificate and requested an effective date of December 12, 2021. [Gaskey Dec., Ex. B, pp. 38-41.] Although Plaintiff had recently undergone an orchiectomy, and was apparently awaiting biopsy results, [Doc. 1, ¶¶ 13, 15], he denied having been advised to undergo any test that had not been completed or for which results had not been received. [Gaskey Dec., Ex. A, p. 39.]

The application for the Second Certificate, like that for the First Certificate, included a "Statement of Understanding":

> I have read this application and represent that the information shown on it is true and complete. I understand that: . . . (2) No benefits will be paid for a health condition that exists prior to the date insurance takes effect.

[Gaskey Dec., Ex. B, p. 41.]

Further, the application included a disclosure, which Plaintiff signed, that was identical to the disclosure included with the First Certificate, regarding the Second Certificate's preexisting condition exclusion:

> This plan does not need to follow federal Affordable Care Act (ACA) rules. Unlike ACA plans, this short-term plan:
>
> - May not cover all injuries and sicknesses, including any you have before applying.
>
> ***
>
> Am I covered for an injury, illness, or disease I had before I applied for this plan (a preexisting condition)?
>
> No.
>
> - You must tell the truth when answering questions about your health.
> - We can deny claims for any injury, illness, or disease you had before signing up for this plan (whether or not you tell us about your condition).

[*Id.*, pp. 26, 47.] In addition, the disclosure informed Plaintiff that open enrollment for ACA compliant plans extended from November 1, 2021 to December 15, 2021. [*Id.*, pp. 27, 46.]

The cover letter for the Second Certificate states that "a health condition which exists before the applicable effective date is not covered during the term length of coverage." [*Id.*, p. 5.] The Second Certificate, like the First Certificate states:

> "Preexisting condition" means an *injury* or illness for which a *covered person* received medical advice or treatment with the 12 months immediately preceding the applicable effective date the *covered person* became insured under the *policy*.
>
> ***
>
> **PREEXISTING CONDITIONS**
>
> *Preexisting conditions*, and complications resulting from a *preexisting condition*, will not be covered under the *policy*/certificate.

[*Id.*, pp. 62, 79.]

**C. <u>Plaintiff's Treatment</u>.**

On December 1, 2021, eleven days before the Second Certificate became effective, Plaintiff began treatment for cancer. [Doc., ¶ 16.] Treatment that Plaintiff received between December 1 and December 11, 2021, was covered under the First Certificate, but treatment received on or after December 12, 2021 was denied under the Second Certificate, because it was excluded by the Second Certificate's pre-existing condition exclusion. [Doc. 1, ¶¶ 16, 18-19.]

Plaintiff concedes that these claims are barred by the terms of the pre-existing condition exclusion, [Doc. 1, ¶¶ 19-20], however, he alleges that the exclusion should be disregarded because Davis told him that the Second Certificate would "provide the same coverage" as the First Certificate. [*Id.*]

## III. <u>ARGUMENTS AND AUTHORITIES</u>

**A. <u>Legal Standard</u>.**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) and a motion for judgment on the pleadings are evaluated under the same legal standard. *See In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007); FED. R. CIV. P. 12(h)(2)(B). To survive either motion, the nonmovant is required to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007). "Factual allegations must support a right to relief that is neither speculative nor merely a conclusion." *Flynn v. CIT Group*, 294 Fed. Appx. 152, 154, 2008 WL 4375928, 2 (5th Cir. 2008). When faced

with a motion for judgment on the pleadings or to dismiss, a court takes as true all well-pled factual allegations and makes all possible inferences in the nonmovant's favor. *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993). However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." *In re Mastercard Intern., Inc.*, 313 F.3d 257, 261 (5th Cir. 2002).

To survive a motion to dismiss under Rule 12(b)(6), a claimant must have pleaded "enough facts to state a claim to relief that is plausible on its face." *In re Plains All Am. Pipeline, L.P. Sec. Litig.*, 307 F. Supp. 3d 583, 612 (S.D. Tex. 2018) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Brown v. City of Houston*, 297 F. Supp. 3d 748, 757 (S.D. Tex. 2017) ("[A] complaint does not need detailed factual allegations but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" (quoting *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007)). Naked assertions will not suffice, and conclusory statements unsupported by factual content are not accepted as true. *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 664. The complaint must contain sufficient factual allegations that, if accepted as true, "nudge [the] claims across the line from conceivable to plausible." *Twombly*, 550 U.S at 570. A claim has facial plausibility only when the claimant pleads facts that allow the court to draw a reasonable inference that the movant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (*citing Twombly,*

550 U.S. at 556). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Culliver*, 503 F.3d at 401.

Finally, "[e]ven if some allegations support a claim, if other allegations negate the claim on its face, then the pleading does not survive the 12(b)(6) review." *Gonzales v. Nueces Cty., Tex.*, 227 F. Supp. 3d 698, 701 (S.D. Tex. 2017). Allegations contained in a nonmovant's pleadings are binding admissions and a nonmovant may plead itself out of court. *In re Electronic Data Systems Corp.*, 305 F. Supp.2d 658, 678 (E.D. Tex. 2004).

### B. <u>Plaintiff Has Failed to State a Claim for Breach of Contract</u>.

To state a claim for breach of contract, Plaintiff must allege the following elements: (1) a valid contract existed between the plaintiff and the defendant; (2) the plaintiff tendered performance or was excused from doing so; (3) the defendant breached the terms of the contract; and (4) the plaintiff sustained damages as a result of the defendant's breach. *See, e.g., West v. Triple B Services, LLP*, 264 S.W.3d 440, 446 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Plaintiff does not allege a breach of the First Certificate, and he admits that claims under the Second Certificate were barred by the terms of the preexisting condition exclusion. [Doc. 1, ¶¶ 16-19, 27.] In this regard, Plaintiff admits that he began receiving cancer treatment no later than December 1, 2021, that the Second Certificate became effective on December 12, 2021, that the Second Certificate had a preexisting condition exclusion, and that all the claims at issue in this lawsuit are for treatment of the cancer for which Plaintiff began receiving treatment at least eleven days before the Second

Certificate became effective. [*Id.*] Under these circumstances, he has admitted that GRIC did not breach the Second Certificate, and his breach of contract claim should be dismissed.

### C. **Plaintiff has Failed to State a Claim for Breach of the Duty of Good Faith and Fair Dealing.**

An insurer breaches its duty of good faith and fair dealing when it denies or delays payment of a claim after its liability has become reasonably clear. *See State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44 (Tex. 1998). An insurer does not breach its duty by erroneously denying a claim, and an insurer has a right to deny an invalid or questionable claim without liability for bad faith. *See In re National Health Ins. Co.*, 109 S.W.3d 607, 610 (Tex. App.—Corpus Christi 2003, no pet.); *Beaumont Rice Mill, Inc. v. Mid-Am. Indem. Ins. Co.*, 948 F.2d 950, 952 (5th Cir. 1991); *Fire Ins. Co. v. Williams*, 955 S.W.2d 267, 268 (Tex. 1997); *see also Koral Indus. v. Security-Connecticut Life Ins. Co.*, 802 S.W.2d 650, 651 (Tex. 1990) (showing a defense to payment of benefits under an insurance policy negated alleged violations of the Texas Insurance Code and DTPA); *Bartlett v. American Republic Ins. Co.*, 845 S.W.2d 342, 348 (Tex. App.—Dallas 1992, no writ). If the insurer has a reasonable basis for denying payment, it cannot be guilty of bad faith or unfair dealing as a matter of law. *See Lyons v. Millers Cas. Ins. Co. of Tex.*, 866 S.W.2d 597, 601 (Tex. 1993).

Plaintiff asserts that GRIC breached its duty of good faith and fair dealing in denying claims submitted under the Second Certificate pursuant to the pre-existing condition exclusion. [Doc. 1, ¶ 23.] Plaintiff's claim for breach of the duty of good faith and fair dealing should be dismissed, because Plaintiff's admissions establish that GRIC had a

reasonable basis to deny payment based on the preexisting condition exclusion. Specifically, Plaintiff concedes that he began receiving treatment for cancer before the effective date of the Second Certificate. This, without more, forecloses Plaintiff's bad faith claim. *See, e.g., Lyons v. Millers Cas. Ins. Co. of Tex.,* 866 S.W.2d 597, 601 (holding that existence of a reasonable basis to deny the claim foreclosed any bad faith claim).

**D. <u>Plaintiff has Failed to State a Claim for Promissory Estoppel.</u>**

The elements of promissory estoppel are: (1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to his detriment. *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983). Where an express contract covers the subject matter of the dispute, a promissory estoppel claim should be dismissed. *See Subaru of America, Inc. v. David McDavid Nissan, Inc.,* 84 S.W.3d 212, 226 (Tex.2002) (stating that "promissory-estoppel doctrine presumes no contract exists"); *Doctors Hosp.1997, L.P. v. Sambuca Houston, L.P.,* 154 S.W.3d 634, 636 (Tex. App.—Houston [14th Dist.] 2004, pet. abated) (stating that, "[f]or many years, Texas courts have held that promissory estoppel becomes available to a claimant only in the *absence* of a valid and enforceable contract").

Here, Plaintiff asserts that Davis "induced an honest belief in the mind of [Plaintiff] that [the Second Certificate] would provide the same coverage as the [First Certificate]." [Doc. 1, ¶ 29.] This claim fails for at least two reasons. First, he admits that the Second Certificate, an express contract, governs the claims he complains of. [Doc. 1, ¶ 29.] Since an express contract governs the dispute, Plaintiff's promissory estoppel claim fails. *Subaru*, 84 S.W. 3d at 226. Second, Plaintiff cannot claim that he reasonably relied on any promise

of Davis, when the application clearly stated that any claims for preexisting conditions would be denied. *See Moody Nat. Bank of Galveston v. GE Life & Annuity Assur. Co.*, 270 F.Supp.2d 875, 881 (S.D. Tex. 2003) (holding plaintiff's reliance on alleged representation by insurer was unreasonable as a matter of law where it was contradicted by policy documents); *Hunton v. Guardian Life Ins. Co. of Am.*, 243 F. Supp. 2d 686, 713 (S.D. Tex. 2002), aff'd, 71 Fed. Appx. 441 (5th Cir. 2003) (holding reliance unreasonable where the agent's alleged statements were contradicted by the application and policy). For both reasons, Plaintiff's promissory estoppel claim should be dismissed.

**E. <u>Plaintiff has Failed to State a Claim for Fraud or Negligent Misrepresentation</u>.**

Claims for fraud and negligent misrepresentation require a plaintiff to show, among other things, justifiable reliance. *CBH Equity, LLC v. Murphy Oil USA, Inc.*, 333 F. Supp. 3d 664, 672 (S.D. Tex. 2018). Where there are "red flags" indicating that reliance is unwarranted, a plaintiff may not justifiably rely on a representation. *See JP Morgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 655 (Tex. 2018) (holding that misrepresentation claims failed because alleged oral representations were contradicted by the parties' written letter of intent). A purchaser of insurance is charged with knowledge of policy terms, and may not rely on representations to the contrary. *See Tower Ins. Co. of New York v. Sherwood Valley 1 Council of Co-Owners, Inc.*, C.A. No. H-10-2843, 2012 WL 13040406, at *3 (S.D. Tex. Mar. 13, 2012) ("An insured is deemed to know the terms of the policy [he] purchases. Texas case law teaches that a party to a contract may not successfully claim that [he] believed the provisions of the contract were different from those plainly set out in the contract, or that [he] did not understand the meaning of the

language"); *Pankow v. Colonial Life Ins. Co. of Texas*, 932 S.W.2d 271, 277 (Tex. App.—Amarillo 1996, writ denied) (finding that alleged misrepresentations by an agent that were contrary to the policy's terms were not actionable where the insureds were charged, as a matter of law, with knowledge of those restrictions); *see also Burton v. State Farm Mut. Auto. Ins. Co.*, 869 F. Supp. 480, 484-85 (S.D. Tex. 1994) (holding that breach of contract, misrepresentation, statutory, and bad faith claims all failed where the policy terms were contrary to the alleged misrepresentations), *aff'd*, 66 F.3d 319 (5th Cir. 1995).

Here, Plaintiff alleges that Davis represented to him that the Second Certificate would provide the "same coverage" as the First Certificate. To the extent Plaintiff is attempting to allege that he was told the Second Certificate would cover his cancer treatment without regard to the Second Certificate's preexisting condition exclusion, he cannot show justifiable reliance.[3] In this regard, Plaintiff was informed, in writing, that conditions for which he was treated during the term of the First Certificate would not be covered by a second short term policy at least five times, in (1) in the application for the First Certificate, (2) the cover letter for the First Certificate, (3) the application for the Second Certificate, (4) the cover letter for the Second Certificate, and (5) the Second Certificate itself. [Gaskey Dec., Ex. A, pp. 3, 26, 45, 58, 75, Ex. B, pp. 5, 28, 43, 47, 62, 79.] For example, the application for the Second Certificate stated:

> This plan does not need to follow federal Affordable Care Act (ACA) rules. Unlike ACA plans, this short-term plan:

[3] Of course, taken literally, Plaintiff cannot show a misrepresentation: the terms of the Second Certificate are materially identical to the First Certificate. [Gaskey Dec., Ex. A, B.]

> May not cover all injuries and sicknesses, including any you have before applying.
>
> ***
>
> Am I covered for an injury, illness, or disease I had before I applied for this plan (a preexisting condition)?
>
> No.
>
> You must tell the truth when answering questions about your health.
>
> We can deny claims for any injury, illness, or disease you had before signing up for this plan (whether or not you tell us about your condition).

[Gaskey Dec., Ex. B, 28, 47.][4] Under these circumstances, Plaintiff cannot show justifiable reliance. *See JP Morgan Chase Bank, N.A.*, 546 S.W.3d at 655 (holding plaintiff could not show justifiable reliance where written documents contradicted alleged misrepresentations). Plaintiff's claims for fraud and negligent misrepresentation should be dismissed.

## IV. <u>CONCLUSION</u>

In view of the foregoing, GRIC requests that the dismiss Plaintiff's claims against it with prejudice.

[4] As with the First Certificate, this notice was included twice.

Respectfully Submitted,

By: /s/ Lance V. Clack

Andrew G. Jubinsky
Texas Bar No. 11043000
andy.jubinsky@figdav.com
Lance V. Clack
Texas Bar No. 24040694
lance.clack@figdav.com

**FIGARI + DAVENPORT, LLP**
901 Main Street, Suite 3400
Dallas, TX 75202
(214) 939-2000
(214) 939-2090 (Fax)

ATTORNEYS FOR DEFENDANT
GOLDEN RULE INSURANCE COMPANY

## CERTIFICATE OF SERVICE

I hereby certify that all attorneys deemed to accept service of the above-referenced document electronically will be notified via the Court's CM/ECF system, and all others will be notified via certified mail, return receipt requested, on May 10, 2022.

*/s/ Lance V. Clack*
Lance V. Clack