2. Not earlier than the 42 days after the date a prescription for a 60-day supply of eye drops is dispensed; or
3. Not earlier than the 63 days after the date a prescription for a 90-day supply of eye drops is dispensed.

**MEDICATION SYNCHRONIZATION PLAN: Covered expenses includes outpatient prescription drugs dispensed according to a medication synchronization plan for chronic illness if the medications:**

A. Are covered under the policy/certificate;

B. Are being used for treatment or management of chronic illness and are prescribed by a doctor or health care provider with refills;

C. Are not Schedule II controlled substances, or Schedule III controlled substances that contain hydrocodone; or

D. Can be effectively dispensed due to its formulation for the purpose of synchronizing fills and refills.

**SUPPLY LIMITS:** *Prescription drugs* are subject to supply limits, which may restrict the amount dispensed per *prescription order* or the amount dispensed per month's supply. For the stated cost sharing amount, *you* may receive a *prescription drug* in quantities up to the stated supply limit. Supply limits are subject to review and may change periodically. *You* may determine the supply limits applicable to a particular *prescription drug* by calling the telephone number on *your* health insurance identification card.

**DESIGNATED PHARMACIES:** For certain *prescription drugs*, including, but not limited to, *specialty prescription drugs*, *we* may direct *you* to a *designated pharmacy*. If *you* choose not to obtain *your prescription drug* from the *designated pharmacy* to which *you* are directed, no benefits will be payable for that *prescription drug*.

**THERAPEUTIC CLASS/THERAPEUTIC EQUIVALENT MAXIMUM ALLOWABLE CHARGE:** *We* may determine a maximum allowable charge for *prescription drugs* in a particular *therapeutic class* or that are *therapeutically equivalent*. If *you* or *your medical practitioner* elect a *prescription drug* included in the same class that is more than the maximum allowable charge assigned, *you* will be responsible for the costs in excess of the maximum allowable charge, in addition to *your* applicable cost sharing amount.

**LIMITATION ON SELECTION OF PHARMACIES:** If *we* determine that *you* may be using *prescription drugs* in a harmful or abusive manner, or with harmful frequency, *we* may require *you* to select a *member pharmacy* to provide and coordinate all future prescription services. If *you* do not make a selection within 31 days of the date that *we* notify *you*, *we* will assign *you* a single *member pharmacy*. Benefits will be paid only when *you* use the assigned pharmacy.

**NO ASSIGNMENT OF BENEFITS:** Benefits payable for drugs dispensed by a non-*member pharmacy*, or by a *member pharmacy* without using a *prescription drug card*, will not be assignable unless *we* are required by the laws of the state where *you* live to accept all benefit assignments. Otherwise, any assignment or attempted assignment of these benefits will be void.

**COUPONS:** The value of any manufacturer coupons may not apply to the applicable *prescription drug copayment amount*, *deductible amount, coinsurance percentage*, and/or *network* out-of-pocket maximum. *You* may access information on which coupons or offers are not permitted through the Internet at www.myuhone.com or by calling the telephone number on *your* health insurance identification card.

**EXCLUSIONS AND LIMITATIONS:** No benefits will be paid under this rider for expenses incurred:

A. For any medication that is used for the treatment of erectile dysfunction or sexual dysfunction, unless *medically necessary*.

B. For immunization agents, blood, or blood plasma.

C. For medication that is to be taken by the *covered person*, in whole or in part, at the place where it is dispensed.

D. For medication received while the *covered person* is a patient at an institution that has a facility for dispensing pharmaceuticals.

E. For a refill dispensed more than 12 months from the date of a *doctor's* order.

F. Due to a *covered person's* addiction to, or dependency on, tobacco or foods.

G. For more than the predetermined *managed drug limitations* assigned to certain drugs or classification of drugs.

H. For a *prescription order* that is available in over-the-counter form, or comprised of components that are available in over-the-counter form, and is *therapeutically equivalent*.

I. For drugs labeled "Caution - limited by federal law to investigational use," or for investigational or experimental drugs.

J. For a *prescription drug* that has (an) active ingredient(s) that is/are:

   1. Available in and *therapeutically equivalent* to another covered *prescription drug*; or

   2. A modified version of and *therapeutically equivalent* to another covered *prescription drug*.

   Such determinations may be made up to six times during a calendar year, and *we* may decide at any time to reinstate benefits for a *prescription drug* that was previously excluded under this paragraph.

K. For *ancillary charges*.

L. In excess of the maximum allowable charge paid for a *therapeutic class* of/*therapeutically equivalent prescription drugs*.

M. For *prescription drugs* dispensed in excess of the supply limit assigned.

N. For compounded drugs that:

   1. Do not contain at least one ingredient that has been approved by the U.S. Food and Drug Administration (FDA) and require a *prescription order* or refill.

   2. Contain a non-FDA approved bulk chemical.

   3. Are available as a similar commercially available *prescription drug*.

O. For a *prescription drug* with an approved *biosimilar* or a *biosimilar* and *therapeutically equivalent* to another covered *prescription drug*. Such determinations may be made up to six times during a calendar year.

P. For certain *prescription drugs* for which there are *therapeutically equivalent* alternatives available, unless required by law or approved by *us*. Such determinations may be made up to six times during a calendar year.

Q. For diagnostic kits and products.

R. For publicly available software applications and/or monitors that may be available with or without a *prescription order* or refill.

S. For any product for which the primary use is as a source of nutrition, nutritional supplement, or dietary management of disease; and for prescription medical food products even when used for the treatment of *illness* or *injury*, except as required by state law.

T. For dental products, including but not limited to, prescription fluoride topicals.

U. For a *prescription drug* received from a non-*member pharmacy*, or from a *member pharmacy* when *your* health insurance card is not used, unless as a result of an *emergency.*

**DEFINITIONS:**

*"Ancillary charge"* means the additional charge incurred by the *covered person* when two drugs are *chemically equivalent* and the higher-tiered drug of the two is dispensed. In addition to the *prescription drug copayment amount,* if any, that applies to the lower-tiered drug, the *covered person* is responsible for an ancillary charge of

the difference between the cost of the lower-tiered drug and the higher-tiered drug dispensed. The *ancillary charge* does not apply to the *network* out-of-pocket maximum.

*"Biosimilar"* means a biological *prescription drug* approved by the U.S. Food and Drug Administration (FDA) based on showing that it is highly similar to a reference product (a biological *prescription drug)* and has no clinically meaningful differences in terms of safety and effectiveness from the reference product.

*"Brand-name drug"* means a *prescription drug* that:

A. Is manufactured and marketed under a trademark or name by a specific drug manufacturer; or

B. *We* identify as a brand-name product based on available data resources including, but not limited to, Medi-Span, that classify drugs as either brand or generic based on a number of factors. A drug identified as a "brand-name" by the manufacturer, pharmacy, or *your* physician may not be classified as a *brand-name drug* by *us*.

*"Chemically equivalent"* means that *prescription drugs* contain the same active ingredient.

"*Chronic illness*" means an *illness* or physical condition that may be reasonably expected to continue for an uninterrupted period of at least three months, and that may be controlled bunt not cured by medical treatment.

*"Designated pharmacy"* means a pharmacy that has entered into an agreement with *us* or with *our* pharmacy benefits manager to provide specific *prescription drugs*, including, but not limited to, *specialty prescription drugs*. The fact that a pharmacy is a *member pharmacy* does not mean that it is a *designated pharmacy*.

*"Generic drug"* means a *prescription drug* that:

A. Is *chemically equivalent* to a *brand-name drug;* or

B. *We* identify as a generic product based on available data resources including, but not limited to, Medi-Span, that classify drugs as either brand or generic based on a number of factors. A drug identified as a "generic" by the manufacturer, pharmacy, or *your* physician may not be classified as a *generic drug* by *us*.

*"Managed drug limitations"* means limits in coverage based upon time period, amount, or dose of a drug, or other specified predetermined criteria.

"*Medication synchronization plan*" means a plan established for the purpose of synchronizing the filing or reviling of multiple prescriptions.

*"Member pharmacy"* means a licensed pharmacy that has entered into a contract with *our* pharmacy benefits manager to provide *prescription drugs* to *covered persons* at a negotiated rate.

*"Prescription drug"* means any medicinal substance whose label is required to bear the legend "RX only."

*"Prescription drug copayment amount"* means the amount to be deducted from the total *covered expense* incurred for each separate *prescription order*.

*"Prescription order"* means the request for each separate drug or medication by a *doctor* or each authorized refill of such requests.

*"Specialty prescription drug"* means *prescription drugs* that are generally high cost, self-injectable biotechnology drugs used to treat patients with certain *illnesses*. *You* may access a complete list of *specialty prescription drugs* by accessing *your prescription drug* benefits on *our* website or by calling the telephone number on *your* health insurance identification card.

*"Therapeutic class"* means a group or category of *prescription drugs* with similar uses and/or actions.

*"Therapeutically equivalent"* means that two or more *prescription drugs* can be expected to produce essentially the same therapeutic outcome and toxicity.

This rider will not change, waive or extend any part of the *policy*/certificate, other than as stated herein.

**Golden Rule Insurance Company**

**President**

# GOLDEN RULE INSURANCE COMPANY
# TEXAS GRIEVANCE PROCEDURES RIDER

This rider replaces any grievance/appeal procedure(s) previously included in the *policy*/certificate.

By the attachment of this rider, the *policy*/certificate is amended to the extent of any conflict with the following:

A. **DEFINITIONS**: As used in this rider, the following terms have the meanings indicated:

1. "*Acquired brain injury*" means a neurological insult to the brain, which is not hereditary, congenital, or degenerative. The injury to the brain has occurred after birth and results in a change in neuronal activity, which results in an impairment of physical functioning, sensory processing, cognition, or psychosocial behavior.

2. "*Adverse determination*" means a determination by a utilization review agent made on behalf of any payor that the health care services provided or proposed to be provided to an *enrollee* are not *medically necessary* or appropriate or are *experimental or investigational*. The term does not include a denial of health care services due to the failure to request prospective or concurrent *utilization review*.

3. "*Complaint*" means:

   a. An oral or written expression of dissatisfaction with a utilization review agent concerning the utilization review agent's process in conducting *utilization review*. The term "*complaint*" does not include:

      i. An expression of dissatisfaction or disagreement with an *adverse determination* (it would constitute an appeal of that *adverse determination*); or

      ii. A misunderstanding or misinformation that is resolved promptly by supplying the appropriate information or by clearing up the misunderstanding to the satisfaction of the complaining party; or

   b. Any written communication, including communication by facsimile or electronic mail, to a health plan, not solicited by such health plan, concerning coverage offered or issued by such health plan in this state and primarily expressing a grievance. A *complaint* is not a misunderstanding or a problem of misinformation that is resolved promptly by clearing up the misunderstanding and/or supplying the appropriate information to the satisfaction of the person submitting the written communication, as applicable.

4. "*Emergency care*" means health care services provided in a hospital emergency facility or comparable facility to evaluate and stabilize medical conditions of a recent onset and severity, including severe pain, that would lead a prudent layperson possessing an average knowledge of medicine and health to believe that the individual's condition, *illness*, or *injury* is of such a nature that failure to get immediate medical care could

   a. Place the individual's health in serious jeopardy;

   b. Result in serious impairment to bodily functions;

   c. Result in serious dysfunction of any bodily organ or part;

   d. Result in serious disfigurement; or

   e. For a pregnant woman, result in serious jeopardy to the health of the fetus.

5. "*Enrollee*" means an individual covered by a health insurance policy or health benefit plan. The term includes an individual who is covered as an eligible dependent of another individual. For the purposes of these procedures, references to *enrollee* include a person acting on behalf of the *enrollee* or the *enrollee's provider of record*.

6. "*Experimental or investigational*" means a health care treatment, service, or device for which there is early, developing scientific or clinical evidence demonstrating the potential efficacy of the treatment, service, or device, but that is not yet broadly accepted as the prevailing standard of care.

7. "*Legal holiday*" means:

a. A holiday as provided in Government Code § 662.003 (a);

b. The Friday after Thanksgiving Day;

c. December 24; and

d. December 26.

8. "*Life-threatening*" means a disease or condition from which the likelihood of death is probable unless the course of the disease or condition is interrupted. The existence of a *life-threatening* condition shall be determined by an *enrollee* on the basis that a prudent layperson possessing an average knowledge of medicine and health would believe that his or her disease or condition is a *life-threatening* condition.

9. "*Provider of record*" means the physician, *doctor*, or other health care provider that has primary responsibility for the health care services rendered or requested on behalf of the *enrollee* or the physician, *doctor*, or other health care provider that has rendered or has been requested to provide the health care services to the *enrollee*. This definition includes any health care facility where health care services are rendered on an inpatient or outpatient basis.

10. *"Reasonable opportunity"* means at least one documented good faith attempt to contact the *provider of record* that provides an opportunity for the *provider of record* to discuss the services under review with the Utilization Review Agent (URA) during normal business hours prior to issuing a prospective, concurrent, or retrospective *utilization review adverse determination*:

    a. No less than one *working day* prior to issuing a prospective *utilization review adverse determination*;

    b. No less than five *working days* prior to issuing a retrospective *utilization review adverse determination*; or

    c. Prior to issuing a concurrent or post-stabilization review *adverse determination*.

11. "*Step therapy protocol*" means a protocol that requires an *enrollee* to use a prescription drug or sequence of prescription drugs other than the drug that the *enrollee's* physician recommends for the *enrollee's* treatment before the health benefit plan provides coverage for the recommended drug.

12. "*Utilization review*" means a system for prospective, concurrent, or retrospective review of the medical necessity and appropriateness of health care services and a system for prospective, concurrent, or retrospective review to determine the *experimental or investigational* nature of health care services. The term does not include a review in response to an elective request for clarification of coverage.

13. "*Working day*" means a weekday that is not a *legal holiday*.

B. **INITIAL ADVERSE DETERMINATIONS**

1. The health plan certified as a URA or the URA will provide notice of a determination made in a *utilization review* to the *enrollee's provider of record*; and the *enrollee* or a person acting on the *enrollee's* behalf.

2. The health plan certified as a URA or the URA must provide notice of an *adverse determination* as follows:

    a. With respect to an *enrollee* who is hospitalized at the time of the *adverse determination*, within 24 hours by either telephone or electronic transmission to the *provider of record*, followed by a letter within three *working days* notifying the *enrollee* and the *provider of record* of the *adverse determination*;

    b. With respect to an *enrollee* who is not hospitalized at the time of the *adverse determination*, within three calendar days in writing to the *provider of record* and the *enrollee*;

    c. With respect to determinations regarding an *acquired brain injury* or a request for an extension of coverage based on medical necessity or appropriateness, the URA must provide notification of the determination through a direct telephone contact to the individual making the request.

d. Within the time appropriate to the circumstances relating to the delivery of the services to the *enrollee* and to the *enrollee's* condition, provided that when denying poststabilization care subsequent to emergency treatment as requested by a treating physician or other health care provider, the agent shall provide the notice to the treating physician or other health care provider not later than one hour after the time of the request;

e. With respect to *step therapy protocol* exception requests:

   i. Within 24 hours of receipt of the request, if the prescribing provider's request states that he/she believes that denial of the request makes the death of or serious harm to the *enrollee* probable; or

   ii. Within 72 hours of all other receipts.

f. With respect to a concurrent review of the provision of prescription drugs or intravenous infusions for which the *enrollee* is receiving health benefits under the health plan, not later than the 30th day before the date on which the provision of prescription drugs or intravenous infusions will be discontinued; or

g. For retrospective *adverse determinations*:

   i. Within a reasonable period, but not later than 30 days after the date on which the claim is received.

   ii. This may be extended once by the utilization review agent for a period not to exceed 15 calendar days, if the utilization review agent:

      a. Determines that an extension is necessary due to matters beyond the utilization review agent's control; and

      b. Notifies the *provider of record* and the *enrollee* before the expiration of the initial 30-day period of the circumstances requiring the extension and the date by which the utilization review agent expects to make a determination.

   iii. If the extension is required because of the failure of the *provider of record* or the *enrollee* to submit information necessary to reach a determination on the request, the notice of extension must:

      a. Specifically describe the required information necessary to complete the request; and

      b. Give the *provider of record* and the *enrollee* at least 45 days from the date of receipt of the notice of extension to provide the specified information.

   iv. If the period for making the determination under this section is extended because of the failure of the *provider of record* or the *enrollee* to submit the information necessary to make the determination, the period for making the determination is tolled from the date on which the utilization review agent sends the notification of the extension to the *provider of record* or the *enrollee* until the earlier of:

      a. The date on which the *provider of record* or the *enrollee* responds to the request for additional information; or

      b. The date by which the specified information was to have been submitted.

3. The written notice must include:

   a. The principal reasons for the *adverse determination*;

   b. The clinical basis for the *adverse determination*;

   c. A description of or the source of the screening criteria used as guidelines in making the *adverse determination*;

   d. The professional specialty of the physician who made the determination;

   e. A description of the procedure for the *complaint* and appeal process, including notice to the *enrollee* of the *enrollee's* right to appeal an *adverse determination* to *us* and of the procedures to obtain that review;

f. Notice of the independent review process, including the Request for Review by an Independent Review Organization form and instructions that:

   i. The form must be completed by the *enrollee*, an individual acting on behalf of the *enrollee*, or the *enrollee's provider of record* and be returned to *us* or the utilization review agent that made the *adverse determination* to begin the independent review process; and

   ii. The release of medical information to the IRO, which is included as part of the form, must be signed by the *enrollee* or the *enrollee's* legal guardian; and

g. If involving a *life-threatening* condition, a description of the *enrollee's* right to an immediate review by an independent review organization (IRO) and of the procedures to obtain that review;

h. If involving a denial of prescription drugs or intravenous infusions for which the *enrollee* is receiving benefits under the health plan, a description of the *enrollee's* right to an immediate review by an IRO and of the procedures to obtain that review; and

i. The right to file a *complaint* with the TDI by contacting the TDI at the following address, telephone numbers, or website:

   Texas Department of Insurance (TDI)
   Consumer Protection (111-1A)
   PO Box 149091
   Austin, TX 78714-9091
   **Toll Free Consumer Help Line:** (800) 252-3439
   Fax: (512) 490-1007
   E-mail: ConsumerProtection@tdi.texas.gov
   Online: www.texashealthoptions.com

C. **INTERNAL REVIEW OF A DENIED STEP THERAPY PROTOCOL EXCEPTION REQUEST**

1. **<u>Request</u>**: A prescribing provider may appeal a denial of a *step therapy protocol* exception request orally or in writing.

2. **<u>Reviewer's Requirements:</u>**

   a. The physician deciding the appeal must consider atypical diagnoses and the needs of atypical patient populations.

   b. A *step therapy protocol* exception should be granted if the request includes the prescribing provider's written statement, with supporting documentation, stating:

      i. The drug required under the *step therapy protocol*:

         a. Is contraindicated; or

         b. Will likely cause an adverse reaction in or physical or mental harm to the *enrollee*; or

         c. Is expected to be ineffective based on the known clinical characteristics of the *enrollee* and the known characteristics of the prescription drug regimen; or

      ii. The *enrollee* previously discontinued taking the drug required under the *step therapy protocol*, or another prescription drug in the same pharmacologic class or with the same mechanism of action as the required drug, while under the health plan currently in force or while covered under another health plan because the drug was not effective or had a diminished effect or because of an adverse event; or

      iii. The drug required under the *step therapy protocol* is not in the best interest of the *enrollee*, based on clinical appropriateness, because the *enrollee's* use of the drug is expected to:

         a. Cause a significant barrier to the *enrollee's* adherence to or compliance with the *enrollee's* plan of care; or

         b. Worsen a comorbid condition of the *enrollee*; or

c. Decrease the *enrollee's* ability to achieve or maintain reasonable functional ability in performing daily activities; or

iv. All of the following:

a. The drug that is subject to the *step therapy protocol* was prescribed for the *enrollee's* condition;

b. The *enrollee* received benefits for the drug under the health plan currently in force or a previous health plan; and is stable on the drug; and

c. The change in the *enrollee's* prescription drug regimen required by the *step therapy protocol* is expected to be ineffective or cause harm to the *enrollee* based on the known clinical characteristics of the *enrollee* and the known characteristics of the required prescription drug regimen.

3. **Resolution Timeframe:**

a. If the exception request also states that the prescribing provider reasonably believes that denial of the request makes the death of or serious harm to the *enrollee* probable, review of the appeal must be completed before 24 hours after *we* receive the request. If *we* fail to approve or deny the request before 24 hours after receipt, the request is considered granted.

b. For all other exception requests:

i. Review of the appeal must be completed as expeditiously as possible based on the medical or dental immediacy of the medical or dental condition or treatment under review, but no later than the earlier of:

a. Within **one *working day*** from the date all information necessary to complete the appeal is received; or

b. Within **72 hours** of the receipt of the request.

ii. If *we* fail to approve or deny the request before 72 hours after receipt, the request is considered granted.

4. **Notification of Determination:**

a. The determination may be provided by telephone or electronic transmission, but must be followed with a letter within **three *working days*** of the initial telephonic or electronic notification.

b. Written notice of the determination must be sent to the *enrollee* and the prescribing provider.

c. If the decision is upheld of modified, the written notice of the determination must include:

i. A statement of the specific medical, dental, or contractual reasons for the resolution (the principle reasons for the *adverse determination*);

ii. The clinical basis for the decision;

iii. A description of or the source of the screening criteria that were utilized in making the determination;

iv. The professional specialty of the physician who made the determination; and

v. The procedure for filing a *complaint* with the URA/health plan concerning the determination;

vi. The Request for Review by an Independent Review Organization form;

vii. Notice of the independent review process with instructions;

viii. The right to file a *complaint* with the TDI by contacting the TDI at the following address, telephone numbers, or website:

Texas Department of Insurance (TDI)
Consumer Protection (111-1A)

PO Box 149091
Austin, TX 78714-9091
**Toll Free Consumer Help Line:** (800) 252-3439
Fax: (512) 490-1007
E-mail: ConsumerProtection@tdi.texas.gov
Online: www.texashealthoptions.com

ix. Reference to the specific plan provision on which the determination is based;

x. A statement that the *enrollee* is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the *enrollee's* claim for benefits;

xi. A statement that the *enrollee* may have a right to bring a civil action under state or federal law;

xii. A description of any standard used, if any, in denying the claim;

xiii. That assistance is available by contacting the specific state's consumer assistance department, if applicable;

xiv. A culturally linguistic statement based upon the *enrollee's* county or state of residence that provides for oral translation of the determination, if applicable

D. **INTERNAL REVIEW OF ADVERSE DETERMINATIONS (NOT INCLUDING STEP THERAPY PROTOCOL DENIALS)**

1. **<u>Standard Review:</u>**

a. <u>Request</u>: An *enrollee,* a person acting on behalf of the *enrollee,* or the *enrollee's provider of record* may appeal an *adverse determination* orally or in writing. For prospective or concurrent review *adverse determinations*, the appeal must be received within 30 calendar days after the date of issuance of written notification of the *adverse determination*. There is not a lime limit for the submission of an appeal regarding retrospective *adverse determinations*. If the appeal includes a request from the *enrollee's* health care provider for a particular type of specialty provider to review the case or if, within **10 *working days*** from the appeal request, the *enrollee's* health care provider requests a particular type of a specialty provider review the case, the request will be handled according to D.3.

b. <u>Acknowledgment</u>: The utilization review agent must send the appealing party a letter acknowledging the receipt of the appeal within **five *working days*** from the date the utilization review agent receives the appeal. The acknowledgment letter must include:

i. The date the utilization review agent received the appeal;

ii. A list of relevant documents that must be submitted by the appealing party to the utilization review agent for the completion of the appeal;

iii. A description of the appeal process; and

iv. A statement that, in circumstances involving an *enrollee's life-threatening* condition, the *enrollee* is entitled to an immediate appeal to an independent review organization (IRO) and is not required to comply with procedures for an internal review of the utilization review agent's *adverse determination*.

c. <u>Reviewer's Requirements:</u>

i. The appeal will be reviewed by a physician licensed to practice medicine and who has not previously reviewed the case.

ii. Prior to issuance of an *adverse determination,* the utilization review agent must afford the *provider of record* a *reasonable opportunity* to discuss the plan of treatment for the *enrollee* with a physician. The discussion must include, at a minimum, the clinical basis for the utilization review agent's decision.

d. <u>Resolution Timeframe:</u>

i. A decision regarding an appeal concerning an *acquired brain injury* or a request for an extension of coverage based on medical necessity or appropriateness must be provided

through a direct telephone contact to the individual making the request not later than ***3 working days*** after the date on which the request is made.

ii. A decision must be made as soon as practical, but in no case later than **30 calendar days** after the date the utilization review agent receives the appeal.

e. Notification of Determination:

i. Written notice of the determination must be sent to the *enrollee*, or a person acting on the *enrollee's* behalf, and the *enrollee's* physician or health care provider.

ii. For prospective, concurrent, or retrospective reviews, if the initial decision is upheld or modified, the written notice of the determination must include:

a. A statement of the specific medical, dental, or contractual reasons for the resolution (the principle reasons for the *adverse determination*);

b. The clinical basis for the decision;

c. A description of or the source of the screening criteria that were utilized in making the determination;

d. The professional specialty of the physician who made the determination;

e. The procedure for filing a *complaint* with the URA/health plan concerning the *utilization review*;

f. The Request for Review by an Independent Review Organization form;

g. Notice of the independent review process with instructions that:

i. Request for a review by an IRO form must be completed by the *enrollee*, an individual acting on behalf of the *enrollee*, or the *enrollee's provider of record* and be returned to *us* or the utilization review agent that made the *adverse determination* to begin the independent review process; and

ii. The release of medical information to the IRO, which is included as part of the independent review request for a review by an IRO form, must be signed by the *enrollee* or the *enrollee's* legal guardian; and

h. A description of the *enrollee's* right to an immediate review by an IRO and of the procedures to obtain that review for an *enrollee* who has a *life-threatening* condition;

i. If involving a denial of prescription drugs or intravenous infusions for which the *enrollee* is receiving benefits under the health plan, a description of the *enrollee's* right to an immediate review by an IRO;

j. The right to file a *complaint* with the TDI by contacting the TDI at the following address, telephone numbers, or website:

Texas Department of Insurance (TDI)
Consumer Protection (111-1A)
PO Box 149091
Austin, TX 78714-9091
**Toll Free Consumer Help Line:** (800) 252-3439
Fax: (512) 490-1007
E-mail: ConsumerProtection@tdi.texas.gov
Online: www.texashealthoptions.com

2. **Expedited Review:**

a. Request: An *enrollee* or a person acting on behalf of the *enrollee* may request an expedited review of an *adverse determination*, orally or in writing, for appeals regarding:

i. *Emergency care*;

ii. Care for *life-threatening* conditions; if the requesting health care provider includes a written statement with supporting documentation that the service is necessary to treat a

*life-threatening* condition or prevent serious harm to the *enrollee,* this is to be considered expedited;

iii. Continued stays for hospitalized *enrollees*; and

iv. Prescription drugs or intravenous infusions for which the *enrollee* is receiving benefits under the health plan.

b. <u>Right to Proceed to Independent Review</u>: The *enrollee* is entitled to an immediate appeal to an IRO and is not required to comply with procedures for an internal review of the utilization review agent's *adverse determination* in circumstances involving:

i. A *life-threatening condition*; or

ii. Prescription drugs or intravenous infusions for which the *enrollee* is receiving benefits under the health plan.

c. <u>Reviewer's Requirements</u>: The review will be conducted by a health care provider who has not previously reviewed the case and who is of the same or a similar specialty as the health care provider who would typically manage the medical condition, procedure, or treatment under review.

d. <u>Resolution Timeframe</u>: The expedited appeal must be completed as expeditiously as possible based on the immediacy of the medical or dental condition, procedure, or treatment under review, but no later than within **one *working day*** from the date all information necessary to complete the appeal is received.

e. <u>Notification of Determination</u>:

i. An expedited appeal determination may be provided by telephone or electronic transmission, but must be followed with a letter within **three *working days*** of the initial telephonic or electronic notification.

ii. Written notice of the determination must be sent to the *enrollee*, or a person acting on the *enrollee's* behalf, and the *enrollee's* physician or health care provider. If the initial decision is upheld or modified, the written notice of the determination must include:

a. A statement of the specific medical, dental, or contractual reasons for the resolution (the principle reasons for the *adverse determination*);

b. The clinical basis for such decision;

c. A description of or the source of the screening criteria that were utilized in making the determination;

d. The professional specialty of the physician who made the determination;

e. Notice of the appealing party's right to seek review of the *adverse determination* by an IRO, including:

i. Notice of the independent review process; and

ii. The Request for Review by an Independent Review Organization; and

f. The procedure for filing a *complaint* with the URA/health plan concerning the *utilization review*.

g. A description of the *enrollee's* right to an immediate review by an IRO and of the procedures to obtain that review for an *enrollee* who has a *life-threatening* condition;

h. If involving a denial of prescription drugs or intravenous infusions for which the *enrollee* is receiving benefits under the health plan, a description of the *enrollee's* right to an immediate review by an IRO;

i. The right to file a *complaint* with the TDI by contacting the TDI at the following address, telephone numbers, or website:

Texas Department of Insurance (TDI)
Consumer Protection (111-1A)

PO Box 149091
Austin, TX 78714-9091
**Toll Free Consumer Help Line:** (800) 252-3439
Fax: (512) 490-1007
E-mail: ConsumerProtection@tdi.texas.gov
Online: www.texashealthoptions.com

3. **Specialty Review:**

   a. Request: A specialty review may be requested if:

      i. An internal appeal is submitted with a request from the *enrollee's* health care provider requesting a particular type of a specialty provider review the case;

      ii. An internal appeal is submitted and within **10 *working days*** from the appeal request, the *enrollee's* health care provider requests a particular type of a specialty provider review the case; or

      iii. The appeal is denied, and within **10 *working days*** from the denial, the *enrollee's* health care provider requests a particular type of a specialty provider review the case.

   b. Reviewer's Requirements: The denial must be reviewed by a health care provider in the same or similar specialty as requested by the *enrollee's* health care provider.

   c. Resolution Timeframe: This specialty review must be completed within **15 *working days*** of receipt of the request.

   d. Notification of Determination:

      i. Written notice of the determination must be sent to the *enrollee*, or a person acting on the *enrollee's* behalf, and the *enrollee's* physician or health care provider.

      ii. For prospective, concurrent, or retrospective reviews, if the initial decision is upheld or modified, the written notice of the determination must include:

         a. A statement of the specific medical, dental, or contractual reasons for the resolution (the principle reasons for the *adverse determination*);

         b. The clinical basis for the decision;

         c. A description of or the source of the screening criteria that were utilized in making the determination;

         d. The professional specialty of the physician who made the determination;

         e. The procedure for filing a *complaint* with the URA/health plan concerning the *utilization review*;

         f. The Request for Review by an Independent Review Organization form;

         g. Notice of the independent review process with instructions that:

            i. Request for a review by an IRO form must be completed by the *enrollee*, an individual acting on behalf of the *enrollee*, or the *enrollee's provider of record* and be returned to *us* or the utilization review agent that made the *adverse determination* to begin the independent review process; and

            ii. The release of medical information to the IRO, which is included as part of the independent review request for a review by an IRO form, must be signed by the *enrollee* or the *enrollee's* legal guardian; and

         h. A description of the *enrollee's* right to an immediate review by an IRO and of the procedures to obtain that review for an *enrollee* who has a *life-threatening* condition;

         i. If involving a denial of prescription drugs or intravenous infusions for which the *enrollee* is receiving benefits under the health plan, a description of the *enrollee's* right to an immediate review by an IRO;

         j. The right to file a *complaint* with the TDI by contacting the TDI at the following address, telephone numbers, or website:

Texas Department of Insurance (TDI)
Consumer Protection (111-1A)
PO Box 149091
Austin, TX 78714-9091
**Toll Free Consumer Help Line:** (800) 252-3439
Fax: (512) 490-1007
E-mail: ConsumerProtection@tdi.texas.gov
Online: www.texashealthoptions.com

E. **INTERNAL REVIEW OF COMPLAINTS NOT INVOLVING ADVERSE DETERMINATIONS**

All *complaints* from an *enrollee* or a person acting on behalf of the *enrollee* that do not involve an *adverse determination* will be handled according to the Texas Claimant Complaint Procedures.

F. **INDEPENDENT REVIEW OF ADVERSE DETERMINATIONS**

1. **Request:**

   a. Any party who has exhausted the internal appeal process of an *adverse determination*, and such appeal resulted in a denial by the utilization review agent, may request an independent review conducted by an IRO.

   b. The internal *adverse determination* appeal process is not required to be exhausted for:

      i. *Life-threatening* conditions; or

      ii. Prescription drugs or intravenous infusions for which the *enrollee* is receiving benefits under the health plan.

   c. The request shall be made on the Request for a Review by an Independent Review Organization form (Form).

   d. The Form authorizing release of medical information to the IRO must be signed by the *enrollee* or the *enrollee's* legal guardian.

2. **Process**:

   a. *We*, or the utilization review agent that made the *adverse determination*, must notify the Department within **1 *working day*** from the date the request for an independent review is received. The utilization review agent must submit the completed Form to the Department through the Department's Internet website.

   b. Within one *working day* of receipt of a complete request, the Department will randomly assign an IRO to conduct an independent review and notify the utilization review agent, payor, IRO, the *enrollee*, and any other providers listed by the utilization review agent as having records relevant to the review of the assignment.

   c. Within **three *working days*** after the date the utilization review agent receives a request for independent review, the utilization review agent must provide to the assigned IRO a copy of:

      i. Any medical records of the *enrollee* in the possession of the utilization review agent that are relevant to the review;

      ii. Any documents used by *us* in making the determinations to be reviewed by the organization;

      iii. The written notification of the internal appeal determination, if applicable;

      iv. Any documentation and written information submitted to the utilization review agent in support of the appeal; and

      v. A list containing the name, address and phone number of each physician or health care provider who has provided care to the *enrollee* and who may have medical records relevant to the appeal.

3. **Resolution Timeframe and Notification of Determination**: The IRO shall notify the *enrollee*, the *enrollee's provider of record*, the utilization review agent, the payor, and the Department of the determination:

a. For a *life-threatening* condition, the provision of prescription drugs or intravenous infusions for which the *enrollee* is receiving benefits under the health plan, or a *step therapy protocol* exception request, by telephone to be followed by facsimile, electronic mail, or other method of transmission not later than the 3rd day after the IRO receives the request that the determination be made; or

b. For a condition other than a *life-threatening* condition, in writing and sent via mail or otherwise transmitted not later than the earlier of:

   i. The 15th day after the date the IRO receives the information necessary to make the determination; or

   ii. The 20th day after the date the organization receives the request for independent review.

4. **General Information:**

   a. The payor and utilization review agent must comply with the IROs determination.

   b. The utilization review agent must pay for the independent review and may recover costs associated with the independent review from the payor.

This rider applies to *covered persons* who reside in the state of Texas.

This rider will not change, waive, or extend any part of the *policy*/certificate, other than as stated herein.

**Golden Rule Insurance Company**

Patrick F. Carr

**President**

**GOLDEN RULE INSURANCE COMPANY**
**TEXAS PLAN DESCRIPTION OF COVERAGE**

**The following is a general description of the important aspects of your Short Term Medical Expense health insurance plan. This is not the insurance contract. If there is a conflict between this plan description and the policy/certificate, the terms of the policy/certificate will control.**

This plan description applies to covered persons who reside in the state of Texas and who are insured under the health insurance plan described below.

A. The policy/certificate described in this plan description is provided by Golden Rule Insurance Company. For questions, or to obtain additional information, about your policy/certificate, you may contact us at: Golden Rule Insurance Company, 7440 Woodland Drive, Indianapolis, IN 46278-1719, or you may call us toll-free at 1-800-657-8205.

B. The policy contains network provider benefits. Network providers have contracts with the network, which contain per diem rates by specialty, fee schedule rates, and discounts of billed charges. The physicians in the network are paid on a fee for service basis for specific procedures and services. Other ancillary providers have individual contracts with the network for applicable services. Network providers may not balance bill the covered person for the difference between the contract rate and the billed charges.

   Non-network providers do not have contracts with the network. The services of non-network providers are not covered by the policy, except for emergencies.

C. The policy covers general medical and surgical health care services of a non-experimental nature, if they are medically necessary and are delivered during the period of coverage. In general, the policy covers: daily hospital room and board and nursing services at the most common semi-private rate; eligible expenses for intensive care; hospital emergency treatment of an injury or illness, subject to a copayment amount; outpatient surgery in a doctor's office or outpatient surgical facility; professional fees charged by doctors and medical practitioners; necessary medical supplies; diabetes management; diagnostic testing; chemotherapy and radiation therapy; hemodialysis; anesthetics; oxygen; dental injuries to the natural teeth; prostheses; durable medical equipment; acquired brain injury; clinical trials; mammography screenings and tests for prostate cancer, ovarian cancer, and cervical cancer; breast reconstructive surgery following a covered mastectomy; reconstructive surgery that is incidental to or follows surgery or an injury that was covered under the policy or is performed to correct a birth defect in a child who has been a covered person from birth; ambulance service for emergencies; transplants; home health care; rehabilitation services or confinement in an extended care facility; outpatient prescription drugs; and other treatments and services identified in the policy. Treatments and services are subject to the limitations and exclusions stated in the policy.

D. Emergency services may be provided by a network or non-network provider at any time without any financial penalty. Emergency room charges are covered for emergency treatment of an injury or illness, subject to a copayment amount.

E. Urgent care services, including professional services, received from network providers are eligible for benefits under the policy/certificate for after-hours care.

F. Medical services received only from network providers are eligible for benefits under the policy/certificate. Non-emergency services received from non-network providers are not covered under the policy/certificate. You may seek emergency services outside the network without any financial penalty.

G. In addition to the premiums for the policy/certificate, a covered person is expected to pay any applicable copayments, deductible, and/or other out-of-pocket expenses in accordance with the terms of the policy/certificate. In general these include, but are not limited to, the following: (1) a copayment for the following if identified in the policy/certificate Data Page as applicable to the type of product selected and purchased by you: prescription drugs and other pharmacy products; physician office visits; urgent care center visits; (2) a specific annual deductible; (3) a coinsurance percentage, if identified in the policy/certificate Data Page as applicable to the type of product selected and purchased by you; and (3) expenses not covered by the policy/certificate (which includes non-emergency services received from non-network providers). The exact copayment amounts, deductible amounts, and coinsurance percentages are found in your health insurance policy/certificate.

H. All health care services must be medically necessary and appropriate in order to be covered. There are specific limitations on covered expenses for assistant surgeon services, which are more particularly described in your policy/certificate. The policy does not cover preexisting conditions. No benefits will be paid for: (1) a service or supply that would be provided at no cost in the absence of insurance; (2) charges that are the responsibility of the provider to pay; (3) services not identified as covered expenses by the policy/certificate; (4) For non-emergency services or supplies received from a provider who is not a network provider, except as specifically provided for by the policy/certificate. Covered expenses do not include any charges that are incurred for: (1) services and supplies received prior to the effective date or after the termination date; (2) charges that are in excess of the eligible expense; (3) weight modification or surgical treatment of obesity, including wiring of the teeth, and all forms of intestinal by-pass surgery; (4) breast reduction or augmentation; (5) modification of the body to improve the psychological, mental, or emotional well-being, such as sex-change surgery; (6) any drug, treatment, or procedure that promotes conception, including, but not limited to, artificial insemination or treatment for infertility or impotency; (7) sterilization or reversal of sterilization; (8) abortion (unless the life of the mother would be endangered if the fetus were carried to term); (9) for television, telephone, or expenses for other persons; (10) marriage, family, or child counseling for the treatment of premarital, marriage, family, or child relationship dysfunctions; (11) telephone consultations or for failure to keep a scheduled appointment; (12) hospital room and board and nursing services for the first Friday or Saturday of an inpatient stay that begins on one of those days, unless it is an emergency, or medically necessary inpatient surgery is scheduled for the day after admission; (13) stand-by availability of a medical practitioner when no treatment is rendered; (14) dental expenses, including braces for any medical or dental condition, surgery and treatment for oral surgery, except as expressly provided by the policy/certificate; (15) cosmetic procedures; (16) learning disabilities, attitudinal disorders, or disciplinary problems; (17) nicotine addiction; (18) eye refractive surgery when the primary purpose is to correct nearsightedness, farsightedness, or astigmatism; (19) confinement for rehabilitation, custodial care, educational care, or nursing services (unless expressly provided for by the policy/certificate); (20) vocational or recreational therapy, vocational rehabilitation, or occupational therapy, except as expressly provided for by the policy/certificate; (21) alternative or complementary medicine using non-orthodox therapeutic practices that do not follow conventional medicine; (22) eyeglasses, contact lenses, hearing aids, eye refraction, visual therapy, or for any examination or fitting related to these devices, except as specifically provided for by the policy/certificate; (23) due to pregnancy (except complications of pregnancy; (24) confinement primarily for well- baby care; (25) preventive or prophylactic care, except as required under applicable state and federal law and expressly provided for in the policy/certificate; (26) experimental or investigational treatment(s) or unproven services; (27) treatment received outside of the United States, except for emergencies; (28) services for employment related injuries and illnesses; (29) treatment as a result of injury or illness caused by intentionally self-inflicted bodily harm, an act or war, taking part in a riot, or commission of a felony whether or not charged; (30) related to durable medical equipment, except as expressly provided for by the policy/certificate; (31) an illness or injury incurred as a result of being intoxicated or under the influence of illegal narcotics or controlled substance unless administered or prescribed by a doctor; (32) surrogate parenting;(33) fetal reduction surgery; (34) treatment of hyperhidrosis; (35) joint replacement, unless related to an injury that is covered by the policy/certificate; (36) non-emergency treatment of tonsils, adenoids, hemorrhoids, or hernia; (37) treatment of mental disorders, substance abuse, or court-ordered treatment programs for substance abuse; (38) treatment of an injury sustained during or due to participating, instructing, demonstrating, guiding, or accompanying others in any of the hazardous activities named in the policy/certificate; (39) outpatient prescription drugs, except as expressly provided under the policy/certificate; and (40) mental disorders and substance-related and addictive disorders, except as expressly provided for by the policy/certificate; (41) outpatient diagnosis and treatment of a spine and back disorder, except as expressly provided by the policy/certificate; and (42) other treatments and services that are specified as excluded or limited in the policy/certificate.

I. If a covered person receives treatment from a provider who ceases to be a network provider during the course of treatment, the covered person may request that benefits continue to be paid as if that provider were still a network provider while coverage remains in force during the policy term: (1) for the first 90 days after the date the provider ceases to be a network provider; (2) for 9 months after the date the provider ceases to be a network provider, for a covered person diagnosed as terminally ill; and (3) through delivery of the child, for immediate postpartum care, and the follow-up checkup within the six-week period after delivery for covered persons past the 24th week of pregnancy.

J. As a current or prospective insured, your satisfaction is very important to us. If you have a complaint, you may write to us at the address shown in paragraph A of this plan description. We will provide a response to your written complaint. The response will be provided within 24 working days of the date

your written complaint is received by us at the address shown in paragraph A of this plan description. If we are not able to respond within 24 working days, we will advise you, in writing or by telephone, why more time is needed to respond to your complaint. We may not retaliate against a covered person because he or she, or a provider or other person on his or her behalf, filed a complaint.

K. To obtain a list of network providers, including which network providers are accepting new patients, go to www.unitedhealthone.com or call the telephone number on your health insurance identification card. Golden Rule Insurance Company has access to UnitedHealthcare networks. Network providers may be found in most areas in the state of Texas and in most other states.

| Network Name | Availability |
|---|---|
| UnitedHealthcare Choice | Entire state of Texas |

A list of network providers can be obtained by contacting us at the address or telephone number in paragraph A. (or you may go to www.unitedhealthone.com.

L. Network demographics and information regarding local market access plans may be found at https://www.uhone.com/legal/texas-insureds or you may contact us at the address or telephone number in paragraph A.

M. You may keep your certificate in force by timely payment of the required premiums. However, we may refuse to renew or terminate the policy/certificate if: (A) you fail to pay premiums as required under the policy/certificate; (B) a person covered under your certificate performs an act or practice that constitutes fraud or an intentional material misrepresentation relating in any way to the policy/certificate, including a claim for benefits.

N. Premiums will be based on the rate table in effect on that premium's due date. The policy plan, age and sex of covered persons, type and level of benefits, time the policy/certificate has been in force, and place of residence on the premium due date are some of the factors used in determining your premium rates.