UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MICHAEL BREWER | § | |
| | § | |
| VS. | § | C.A. No. 4:22-CV-00969 |
| | § | |
| GOLDEN RULE INSURANCE COMPANY AND TOBIAS & ASSOCIATES, INC. D/B/A GETMEHEALTHCARE | § § § § | |

# DEFENDANT TOBIAS & ASSOCIATES, INC. D/B/A GETMEHEALTHCARE'S MOTION FOR FINAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT OF SAME


Clinton J. Echols
State Bar No. 00790625
**RYMER, ECHOLS, SLAY, & NELSON-ARCHER, P.C.**
2801 Post Oak Blvd., Suite 250
Houston, Texas 77056
Telephone: (713) 626-1550
Facsimile: (713) 626-1558
Email: cechols@resnlaw.com

**ATTORNEY IN CHARGE FOR DEFENDANT, TOBIAS & ASSOCIATES, INC. D/B/A getmehealthcare**

## TABLE OF CONTENTS

*Page*

I. NATURE OF CASE AND SUMMARY OF ARGUMENT ....... 1

II. STANDARD OF REVIEW ....... 2

III. SUMMARY JUDGMENT EVIDENCE ....... 3

IV. STAGE OF PROCEEDING ....... 3

V. FACTUAL BACKGROUND ....... 4

VI. ARGUMENT AND AUTHORITIES ....... 7

A. DUTY OF AN INSURANCE AGENT ....... 8

B. NEGLIGENT MISREPRESENTATION ....... 10

C. FRAUD AND FRAUD BY NONDISCLOSURE ....... 12

D. PROMISSORY ESTOPPEL ....... 12

E. BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING ....... 13

F. CIVIL CONSPIRACY ....... 14

G. STATUTORY CLAIMS UNDER THE TEXAS INSURANCE CODE AND THE DTPA ....... 15

i. Violations of the Texas Deceptive Trade Practices Act ....... 15

ii. Violations of the Texas Insurance Code ....... 17

VII. CONCLUSION AND PRAYER ....... 20

## TABLE OF AUTHORITIES

*Page(s)*

**UNITED STATES SUPREME COURT CASES:**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ..... 2

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ..... 2

**UNITED STATES CIRCUIT COURT OF APPEALS CASES:**

*Apani Sw., Inc. v. Coca-Cola Enters, Inc.*,
300 F.3d 620 (5th Cir. 2002) ..... 14

*Forsyth v. Barr*,
19 F.3d 1527 (5th Cir. 1994) ..... 2

*General Elec. Capital Corp. v. Posey*,
415 F.3d 391 (5th Cir. 2005) ..... 10

*Kariuku v. Tarango*,
709 F.3d 495 (5th Cir. 2013) ..... 2

*United Teacher Associates Ins. Co. v. Union Lab. Life Ins. Co.*,
414 F3d 558 (5th Cir. 2005) ..... 12

**UNITED STATES DISTRICT COURT CASES:**

*American Guarantee and Liability Ins. Co. v. Shel-Ray Underwriters, Inc.*,
844 F. Supp. 325 (S.D. Tex. 1993) ..... 9

*Aspen Specialty Ins. Co. v. Muniz Engineering, Inc.*,
514 F. Supp. 2d 972 (S.D. Tex. 2007) ..... 8

*Vizza Wash, LP v. Nationwide Mut. Ins. Co.*,
496 F. Supp. 3d 1029 (W.D. Tex. 2020) ..... 14

**TEXAS SUPREME COURT CASES:**


*Doe v. Boys Clubs of Greater Dallas, Inc.*,
907 S.W.2d 472 (Tex. 1995)....................15

*Fed. Land Bank Ass'n of Tyler v. Sloane*,
825 S.W.2d 439 (Tex. 1991)....................10

*May v. United Services Ass'n of America*,
844 S.W.2d 666 (Tex. 1992)....................8, 14

*McCall v. Marshall*,
398 S.W.2d 106 (Tex. 1965)....................8

*Natividad c. Alexis, Inc.*,
875 S.W.2d 695 (Tex. 1994).................... 13

*Royal Globe Insurance Company v. Bat Consultants, Inc.*,
577 S.W.2d 688 (Tex. 1979)....................15

*Schlumberger Technology Corp. v. Swanson*,
959 S.W.2d 171 (Tex. 1997)....................12


**TEXAS COURT OF APPEALS CASES:**


*Bank One, Tex., N.A. v. Little*,
978 S.W.2d 272 (Tex. App.—Fort Worth 1998, pet. denied) ....................16

*Celestino v. Mid-American Indem. Ins. Co.*,
883 S.W.2d 310 (Tex. App.—Corpus Christi 1994, writ denied) ....................15, 16, 18,19

*Goldstein v. Mortenson*,
114 S.W.3d 769 (Tex. App.—Austin 2003, no pet.) ....................14

*Heritage Manor of Blaylock Properties, Inc. v. Petersson*,
677 S.W.2d 689 (Tex. App—Dallas 1984)....................8, 9

*Jeffries v. Pat. A. Madison, Inc.*,
269 S.W.3d 689 (Tex. App.—Eastland 2008, no pet.) ....................10, 11

*Moore v. Whitney-Vaky*,
966 S.W.2d 690 (Tex. App.—San Antonio 1998, no pet)....................15

*Ostrovitz & Gwinn, LLC v. First Specialty Ins. Co.*,
393 S.W.3d 379 (Tex. App.—Dallas 2012, no pet.)....................19

*Pankow v. Colonial Life Ins. Co. of Tex.*,
932 S.W.2d 271 (Tex. App.—Amarillo 1996, writ denied) ............................................11

*Pickens v. Texas Farm Bureau Ins. Co.*,
836 S.W.2d 803 (Tex. App.—Amarillo 1992, no writ)......................................................8

*Shindler c. Mid-Continent Life Ins. Co.*,
768 S.W.2d 331 (Tex. App.—Houston [14th Dist.] 1989, no writ) .................................11

*Simpson v. MBank Dallas, N.W.*,
724 S.W.2d 102 (Tex. App.—Dallas 1987, write ref'd n.r.e.). ........................................13

*Traco, Inc., a Three Rivers Aluminum Co. v. Arrow Glass Co., Inc.*,
814 S.W.2d 186 (Tex. App.—San Antonio 1991, writ denied)........................................13

*Wyly v. Integrity Ins. Solutions*,
502 S.W.3d 901 (Tex. App.—Houston [14th Dist.] 2016, no pet.)......................15, 16, 18

**FEDERAL RULES:**

Fed. R. Civ. P. 56 ..............................................................................................................2

**TEXAS STATUTORY AND CODE PROVISIONS:**

V.T.C.A., Bus. & C §17.46(b) ..........................................................................................16

V.T.C.A., Bus. & C §17.46(b)(2) .....................................................................................17

V.T.C.A., Bus. & C §17.46(b)(5) .....................................................................................16

V.T.C.A., Bus. & C §17.46(b)(7) .....................................................................................16

V.T.C.A., Bus. & C §17.46(b)(9) .....................................................................................17

V.T.C.A., Bus. & C §17.46(b)(12) ...................................................................................16

V.T.C.A., Bus. & C §17.46(b)(24) ...................................................................................16

V.T.C.A., Insurance Code §541.051 ............................................................................ 17, 18

V.T.C.A., Insurance Code §541.052 .............................................................................17, 18

V.T.C.A., Insurance Code §541.060 .............................................................................17, 18

V.T.C.A., Insurance Code §541.061 ....................................................17, 18

V.T.C.A., Insurance Code §541.061(2) ....................................................19

V.T.C.A., Insurance Code §541.061(3) ....................................................19

V.T.C.A., Insurance Code §541.061(5) ....................................................19

V.T.C.A., Insurance Code §542.003 ....................................................17, 18

**DEFENDANT TOBIAS & ASSOCIATES, INC. D/B/A GETMEHEALTHCARE'S MOTION FOR FINAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT OF SAME**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Defendant, Tobias & Associates, Inc. D/B/A getmehealthcare ("Tobias") and files this its Traditional Motion for Final Summary Judgment, and in support of said motion, Defendant would respectfully show this Honorable Court the following:

## *I.*
## *Nature of Case and Summary of Argument*

1. This lawsuit arises out of a dispute regarding coverage afforded under an insurance policy issued to Michael Brewer ("Plaintiff"). In mid-2021, Plaintiff purchased a short-term health insurance policy, which excluded coverage for preexisting conditions, from Golden Rule Insurance Company ("Golden Rule") with Tobias serving as Plaintiff's retail insurance agent. During the term of this first policy, Plaintiff was diagnosed with testicular cancer. In late 2021, immediately prior to the expiration of the initial short-term health insurance policy, Plaintiff again applied for an identical policy with Golden Rule. Plaintiff failed to disclose on the application, or directly to Tobias, that he had been diagnosed with cancer. The application was approved, and Golden Rule issued a second policy to Plaintiff. However, when Plaintiff sought insurance benefits related to medical treatment provided in connection with his testicular cancer under the second policy, Golden Rule denied coverage under the pre-existing condition exclusion.

2. Plaintiff generally alleges that Tobias negligently or intentionally misrepresented the policy to Plaintiff, which led him to believe his cancer would be covered under the second Golden Rule policy. Plaintiff relies on both common law and statutory causes of action, all of which allege that Tobias made misrepresentations regarding the second Golden Rule policy, breached the duty an insurance agent owes to an insured, "conspired" with Golden Rule to "trick him" into buying

coverage that he would not have otherwise bought, and caused confusion about the policy on which Plaintiff reasonably relied.

3. Summary judgment is appropriate in this case as controlling Texas law definitively negates Plaintiff's causes of action. Under Texas law, a retail insurance agent is only required to use best effort to procure an insurance policy or coverages ***as requested by the insured***. This is precisely what Tobias did. It assisted in procuring the requested health insurance policy. Tobias was never told about the Plaintiff's cancer diagnosis and never made any representations regarding whether coverage for medical treatment related to this condition would or would not be provided under the second policy.[1]

## *II.*
## ***Standard of Review***

4. To prevail on a motion for summary judgment, the movant must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). No genuine issue of material facts exists if "the record, taken as a whole, could not lead a rational trier-of-fact to find for the non-moving party." *Kariuku v. Tarango*, 709 F.3d 495, 501 (5th Cir. 2013). The movant bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). All facts and inferences must be viewed in a light most favorable to the nonmoving part. *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

---

[1] Importantly, it appears that Plaintiff's cancer diagnosis did not occur until ***after*** all communications with Tobias regarding the purchase of the second policy had been completed, meaning that Tobias literally could not have misrepresented or miscommunicated anything related to coverage for Plaintiff's cancer.

## *III.*
## ***Summary Judgment Evidence***

5. True and correct copies of the following documents are attached hereto, as intended to serve as summary judgment evidence in support of this motion:

| | |
|---|---|
| ***Exhibit "A"*** | True and Correct Excerpts from the Deposition of Michael Brewer, February 10, 2023 |
| ***Exhibit "B"*** | True and Correct Excerpts from the Deposition of Ann Brewer, February 21, 2023 |
| ***Exhibit "C"*** | First Golden Rule application, June 9, 2021, Bates Nos. TOBIAS 000037 to 000049 |
| ***Exhibit "D"*** | Second Golden Rule application, November 5, 2021, Bates Nos. TOBIAS 000052 to 000065 |
| ***Exhibit "E"*** | Golden Rule welcome letter, Bates Nos. GRIC 000014 to GRIC 000017 |
| ***Exhibit "F"*** | First Golden Rule policy, Certificate No 096-422-291, GRIC 000036 to 000118 |
| ***Exhibit "G"*** | Second Golden Rule policy, Certificate No. 096-540-158, GRIC 000739 to 000812 |
| ***Exhibit "H"*** | Expiration email, November 3, 2021, Bates No. BREWER 000773 |

## *IV.*
## ***Stage of Proceeding***

6. Discovery in this case has been substantially completed. The depositions of the Plaintiff and his mother, Ann Brewer, have been completed. The Plaintiff has deposed the primary employee of Tobias involved in this claim, Christopher David. Written discovery is complete. The deadline to file dispositive motions is July 20, 2023. This motion has been filed timely.

## *V.*
## ***Factual Background***

7. On or about June 10, 2021, Mr. Brewer and/or his partner, Miriam Quiroz, contacted his mother, Ann Brewer, to discuss his need for insurance.[2] He informed Ms. Brewer that he was getting older and felt like he needed insurance.[3] Miriam Quiroz gave Ms. Brewer the name and contact information for Tobias and asked Ms. Brewer to contact Tobias to assist with obtaining insurance as Ms. Quiroz did not speak English well.[4] The only instruction and/or request given by Ms. Quiroz regarding the type and/or nature of medical insurance needed insurance was that Mr. Brewer "wanted medical insurance."[5]

8. As requested, Ms. Brewer contacted Tobias to assist with the procurement of medical insurance as directed by her son and/or his partner on either June 9 or 10, 2021.[6]. Exactly as she was instructed to Ms. Brewer requested the following from Tobias:

Q. Do you remember who you spoke to at Tobias & Associates?

A. Shane Brody [sic] and Christopher Davis.

Q. Did you talk to Mr. Davis back in June of 2021?

A. No, it was strictly Shane Brody.

Q. And what was the conversation about between you and Mr. Brody?

A. Getting insurance for Michael [Brewer]..

Q. What did you -- what did you ask for in particular when you spoke to Mr. Brody?

A. I asked for insurance, health insurance.

Q. Okay.

---

[2] *See* Deposition of Ann Brewer, attached hereto as ***Exhibit "B"***, page 8, lines 21-25, page 9 lines 1-5.
[3] *Id.*
[4] *Id.* at page 9, lines 9-16.
[5] *Id.* at page 9, lines 17-24.
[6] *Id.* at page 10, lines 9-18.

A. I asked for health insurance.[7]

This resulted in the issuance of the first Golden Rule short-term health policy at issue in this case, with an effective date of June 10, 2021 and a termination date of December 11, 2021.[8] During this entire initial exchange, Ms. Brewer was the sole person responsible for communicating with Tobias and providing information needed for insurance application.[9]

9. The application for the Golden Rule's short-term health policy is obviously tailored to highlight the exclusion of pre-existing conditions to a layperson. Among the application documents was an instructional form entitled "Is this short-term health insurance plan right for me?" which required a signature from Mr. Brewer and an acknowledgment that he had read and understood the benefits and limits of this insurance product. [10] The form included the question: "Am I covered for an injury, illness, or disease I had before I applied to this plan (a preexisting condition)?" The answer was simply "No."[11] The application also included a form entitled "Acknowledgement of Application Completion," signed by Mr. Brewer which indicated that he had personally reviewed the application and made any necessary changes to avoid incorrect information."[12]

10. After the initial policy was issued, Golden Rule sent Mr. Brewer a welcome letter that explicitly noted that the policy in question was only issued for a specific period of time, that if coverage beyond that period of time was needed Mr. Brewer would need to reapply, and that "***any illness or condition developed under your current plan would be considered preexisting under the new plan and would not be a covered expense***."[13]

---

[7] *Id.* at Page 10, lines 23-25, Page 11, lines 1-10.
[8] *See* Golden Rule Certificate No 096-422-291, attached hereto as ***Exhibit "F"***, Bates No. GRIC 000036.
[9] *See* Deposition of Michael Brewer, attached hereto as ***Exhibit "A"***, page 10, line 25; page 11, lines 1-5.
[10] *See* First Golden Rule application, attached hereto as ***Exhibit "C"***, Bates No. TOBIAS 000043 to 000046.
[11] *Id.*
[12] *Id.* at TOBIAS 000049.
[13] *See* welcome letter attached hereto as ***Exhibit "E"***, page 2 (emphasis added).

11. On June 14, 2021 (after coverage under the initial short-term insurance policy had begun), Mr. Brewer was treated at HTX Urology due to a suspected urinary tract infection and was prescribed antibiotics.[14] The antibiotics failed and Mr. Brewer's condition worsened, and on October 21, doctors performed an orchiectomy to remove Mr. Brewer's left testicle for a presumed testicular infection.[15]

12. On November 3, 2021, Tobias, through its representative Christopher Davis, emailed Ann Brewer advising her that Plaintiff's policy was about to expire.[16] In his email, Mr. Davis stated "I wanted to reach out as your UnitedHealthcare medical insurance policy is coming to it's [sic] expiration/renewal date," and "if you would like to renew your current plan at the same level of coverage, I can resend the electronic signature via text or email."[17] On November 5, 2021, Ann Brewer contacted Mr. Davis and completed an application for a second short-term medical insurance with Golden Rule.[18] During that conversation, the only relevant request made by Ms. Brewer was that the policy be renewed.[19] Ms. Brewer has admitted that she never told Mr. Davis that Mr. Brewer had cancer or that the new policy needed to provide coverage for cancer or any other pre-existing condition.[20] Likewise, it is undisputed that Mr. Davis made no representations regarding any coverage that would be afforded under the second policy, specifically including any representation that the new policy would cover cancer or any pre-existing condition.[21] Mr. Davis' only alleged representation of relevance was that the second policy would provide the same coverages as Mr. Brewer's first policy.[22] To that end, as admitted by Mr. Brewer, there is no

[14] *See* Deposition of Michael Brewer, attached hereto as ***Exhibit "A",*** page 106, lines 7-14.
[15] *Id.* at page 108, lines 17-19.
[16] *See* Deposition of Ann Brewer, attached hereto as ***Exhibit "B",*** Page 16, lines 16-23.
[17] *See* Renewal Email, attached hereto as ***Exhibit "H".***
[18] *See* Deposition of Ann Brewer, attached hereto as ***Exhibit "B",*** page 111, lines 23-25; page 112, lines 1-2.
[19] *See* Deposition of Ann Brewer, attached hereto as ***Exhibit "B",*** page 15, line 25, page 16, lines 1-2.
[20] *See* Deposition of Ann Brewer, attached hereto as ***Exhibit "B",*** page 169, lines 21-25, page 170, lines 1-9.
[21] *Id.* at page 170, lines 10-15.
[22] *Id.* at page 107, lines 14-19.

dispute in this case that the two policies provided by Golden Rule were, in face, virtually identical, with the only changes being non-coverage items such as the applicable deductible and copay.[23]

13. Again, Mr. Brewer was required to, and did, e-sign all forms in connection with the application for the second policy.[24] To that end, the application for the second policy was identical to the application for the first policy, inclusive of all warnings regarding the exclusion of pre-existing conditions.[25] Importantly, ***the application affirmatively represented that Mr. Brewer did not have cancer and had not undergone any medical tests for which results had not yet been received***.[26] Mr. Brewer admitted that he did not read the application or any of the other forms associated with the second policy.[27] He also admitted that he never spoke or communicated with anyone at Tobias.[28] The only person that contacted Tobias, and potentially the only person that read and/or completed the application and accompanying materials, was Plaintiff's mother, Ann Brewer. The second identical health insurance policy was issued to Mr. Brewer with an effective date of December 12, 2021.[29]

## *VI.*
## ***Argument and Authorities***

14. Plaintiff has alleged eight causes of action in his First Amended Complaint, seven of which seem to implicate Tobias. Plaintiff alleges that Tobias (a) negligently misrepresented the coverage of the second Golden Rule policy; (b) made material misrepresentations regarding coverage under the second Golden Rule policy amounting to fraud, and failed to disclose material facts regarding the policy's coverage amounting to fraud; (c) induced Plaintiff to believe that his second Golden

---

[23] *See* Deposition of Michael Brewer, attached hereto as ***Exhibit "A"***, page 101, lines 17-20.
[24] *See* Second Golden Rule Application, attached hereto as ***Exhibit "D"***, Bates Nos. TOBIAS 000064-65.
[25] *See* Deposition of Ann Brewer, attached hereto as ***Exhibit "B"***, page 84, lines 14-20, page 90 line 7 to page 95, line 9.
[26] *See* Second Golden Rule Application, attached hereto as ***Exhibit "D"***, page 12.
[27] *See* Deposition of Michael Brewer, attached hereto as ***Exhibit "A"***, page 95, lines 14-20.
[28] *Id*. at page 26, lines 6-7.
[29] *See* Golden Rule Certificate No. 096-540, 158, attached hereto as ***Exhibit "G"***, Bates No. GRIC 000741.

Rule policy would provide the same coverage as his first policy, and plaintiff to reasonably relied on such belief to his detriment; (d) breached a duty of good faith and fair dealing; (e) conspired with Golden Rule to lead Plaintiff to believe he had specific insurance coverage and deny him said coverage; (f) violated Texas Deceptive Trade Practices Act; and (g) violated the Texas Insurance Code. Each claim is addressed below separately, albeit essentially all of them are based on the same alleged misreprentation of Tobias, and as such likely fail or survive based on the applicable duty of care owed by an insurance agent in Texas as addressed in the section immediately below.

A. The Duty of an Insurance Agent

15. The duty owed by a retail insurance agent to an insured is relatively narrow and well defined in Texas. An insurance agent who is engaged to procure a policy of insurance for an insured owes the insured the duty "to use reasonable diligence in attempting to place the ***requested*** insurance and inform the client promptly if they are unable to do so." *May v. United Services Ass'n of America*, 844 S.W.2d 666, 669 (Tex. 1992) (emphasis added). Even if an agent knows that an insured may need additional insurance, the agent still has no legal duty to extend coverage beyond what the insured requested. *Pickens v. Texas Farm Bureau Ins. Co.*, 836 S.W.2d 803, 805 (Tex. App.—Amarillo 1992, no writ) (citing *McCall v. Marshall*, 398 S.W.2d 106, 109 (Tex. 1965)). An insurance agent has no duty to explain the terms of an insurance policy to an insured, and an insured has the duty to read and familiarize themself with the terms of the policy. *Aspen Specialty Ins. Co. v. Muniz Engineering, Inc.*, 514 F. Supp. 2d 972, 983 (S.D. Tex. 2007) (citing *Heritage Manor of Blaylock Properties, Inc. v. Petersson*, 677 S.W.2d 689, 691 (Tex. App—Dallas 1984)). An insured is bound by the terms of their policy whether they have read the terms or not. *Id.* Additionally, an insured cannot complain that they did not know about, were mistaken about, or did not read an exclusion if they accepted an agreement that "clearly states that it was agreed and

understood by the insured." *American Guarantee and Liability Ins. Co. v. Shel-Ray Underwriters, Inc.*, 844 F. Supp. 325, 332 (S.D. Tex. 1993) (citing *Heritage Manor*, 667 S.W.2d at 691).

16. Tobias met the applicable duty of care in this case. Tobias was requested to procure and/or assist in procuring a health care policy. Ann Brewer explicitly communicated to Mr. Davis that she wanted, for Michael Brewer, the same policy they had purchased the first time, and that is exactly what Mr. Davis provided.[30] Tobias was not requested to provide a policy of insurance that would provide coverage for any specific condition and was not requested to provide a policy of insurance that would cover pre-existing conditions of any kind. Tobias was never told that Mr. Brewer allegedly had cancer and was never asked about whether the second Golden Rule policy would provide coverage for future cancer treatments. Moreover, there is no evidence that Tobias ever volunteered information or made any representation, even in the absence of a specific request or question, regarding whether pre-existing conditions or cancer treatments would be covered under the second Golden Rule policy. At most, the "request" from Ms. Brewer on behalf of her son was for insurance that provided the same coverage. As it relates to pre-existing conditions, ***both*** policies had exclusions for such conditions. Plaintiff's cancer treatment was not a pre-existing condition under the first policy but was a pre-existing condition under the second policy. Indeed, it would be difficult, if not impossible, for Tobias to make any commentary regarding whether Mr. Brewer's cancer treatments would be covered given that Tobias was never told that Mr. Brewer had cancer. This is consistent with the fact that the Plaintiff did not disclose the existence of a pre-existing condition on the application for the second policy.[31]

17. As Tobias met the applicable standard of care for insurance agents in Texas, which is

---

[30] *See* Deposition of Ann Brewer, attached hereto as ***Exhibit "B"***, page 112, lines 17-24.

[31] *See* Deposition of Ann Brewer, attached hereto as ***Exhibit "B"***, page 17, lines 17-24; page 169, lines 21-25, page 170, lines 1-9.

applicable to virtually any theory of liability that Plaintiff may have, Defendant is entitled summary judgment with respect to all claims of Plaintiff.

B. Negligent Misrepresentation

18. All facts, arguments, and authorities cited in all preceding paragraphs are incorporated herein by reference as if fully set forth.

19. To prove negligent misrepresentation under Texas law, a plaintiff must allege and prove all four of the following elements: (1) The defendant made a representation in the course of their business, or in a transaction in which they have a pecuniary interest; (2) the defendant supplied false information to others for guidance of their business; (3) the defendant failed to exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss because they justifiably relied on the defendant's representation. *General Elec. Capital Corp. v. Posey*, 415 F.3d 391, 395-96 (5th Cir. 2005); *Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991).

20. In a similar Texas case involving short-term health insurance policies, the court in *Jeffries v. Pat. A. Madison, Inc.*, also addressed the pre-existing condition exclusion in multiple policies. 269 S.W.3d 689, 690 (Tex. App.—Eastland 2008, no pet.). Specifically, the insured in that case purchased three consecutive short-term health insurance policies through her insurance agent. *Id.* During the second policy's coverage period, the insured was diagnosed with a thyroid condition for which she needed surgery. *Id.* The insured met with her agent to look for new coverage and the agent told her that a new carrier would consider her thyroid a preexisting condition. *Id.* The insured then asked about her current policy, and her agent told her, "it wouldn't be very nice of them but that [she] would have to pay an additional $1,000 deductible if [she had] the surgery [after the second policy ended and a third policy began]." *Id.* The insured bought a new policy, had the

surgery, and was denied coverage because her thyroid was a pre-existing condition. *Id.*

21. While the *Jeffries* court held that the agent's representation that it "wouldn't be very nice of them" was not a positive assertion of fact and therefore was not actionable, it agreed that, in context, the additional statement that the insured would have to pay a $1,000 deductible reasonably represented to the insured that she would have coverage under the subsequent policy. *Id.* However, the court held that the insured could not rely on the agent's statement because "a misrepresentation claim cannot stand when the party asserting the claim is legally charged with knowledge of the true facts." *Id.* (citing *Shindler c. Mid-Continent Life Ins. Co,*, 768 S.W.2d 331, 334 (Tex. App.—Houston [14th Dist.] 1989, no writ). Accordingly, the court held that an insured is legally charged with knowing the provisions of their policy. *Id.* (citing *Pankow v. Colonial Life Ins. Co. of Tex.*, 932 S.W.2d 271, 277 (Tex. App.—Amarillo 1996, writ denied).

22. *Jeffries* is extremely compelling when compared to the facts of this case. Even though the agent in *Jefferies* actually made a misrepresentation, the agent was still not liable due to the insured being legally charged with knowledge of the actual coverage provided. In the case at hand, Tobias did not make any representation, comment, or statement, either expressly or impliedly, regarding the coverage afforded under the subsequent policy. However, even if Tobias did make such a representation, the Plaintiff was legally charged with the knowledge of what the second policy actually covered by virtue of the numerous confirming documents provided to and signed by the Plaintiff. Plaintiff was told, in writing, by the insurance carrier that in reapplying for coverage, "any illness or condition developed under your current plan would be considered preexisting under the new plan."[32] This specific circumstance, the development of a condition that would be

[32] *See* Welcome Letter, hereto attached as ***Exhibit "E"***, page 2 (emphasis added).

considered pre-existing under any subsequent policy, was called out, clarified, and addressed months before application was made for a second short-term health insurance policy.

C. Fraud and Fraud by Nondisclosure

23. All facts, arguments, and authorities cited in all preceding paragraphs are incorporated herein by reference as if fully set forth.

24. Common law fraud occurs when: (1) a defendant misrepresents a material fact, (2) the defendant knows the representation is false or makes it with a reckless disregard of its truth or falsity, (3) the defendant intends that the plaintiff acts upon the representation, (4) and the plaintiff justifiably relies on the representation and thereby suffers injury. *United Teacher Associates Ins. Co. v. Union Lab. Life Ins. Co.*, 414 F3d 558, 566 (5th Cir. 2005). Fraud by nondisclosure is a subcategory of fraud in which the defendant has a duty to disclose, and the defendant's nondisclosure acts as a misrepresentation of material facts in element one of the claim. *Schlumberger Technology Corp. v. Swanson*, 959 S.W.2d 171 (Tex. 1997).

25. Here, the summary judgment evidence conclusively establishes that Tobias made no affirmative misrepresentation, of any kind, regarding any matter at issue herein, and certainly did not act recklessly or with intent to deceive. From a fraud by nondisclosure perspective, Tobias did not have a duty to disclose any information related to insurance policies requested by the Plaintiff, as established by the duty of care owed by an insurance agent under Texas law. An insurance agent has no duty to explain a policy or even suggest coverage if the agent thinks an insured may require something different.

D. Promissory Estoppel

26. All facts, arguments, and authorities cited in all preceding paragraphs are incorporated herein by reference as if fully set forth.

27. Promissory estoppel has four elements: "(1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promise to his detriment, and (4) a definite finding that injustice can be avoided only by the enforcement of the promise. *Zenor v. El Paso Healthcare Systems, Ltd.*, 176 F.3d 847, 864 (5th Cir. 1999) (internal citation and quotation marks omitted). Many courts have emphasized that the fourth element means that a plaintiff must have a "reasonable or justified" reliance on the statements of the person sought to be estopped. *Traco, Inc., a Three Rivers Aluminum Co. v. Arrow Glass Co., Inc.*, 814 S.W.2d 186 (Tex. App.—San Antonio 1991, writ denied) (citing *Simpson v. MBank Dallas, N.W.*, 724 S.W.2d 102, 108 (Tex. App.—Dallas 1987, write ref'd n.r.e.).

28. While Defendant is not entirely certain that Plaintiff's promissory estoppel claim was asserted against it, any such claim against Tobias fails on all elements. Plaintiff's First Amended Complaint fails to identify any "promise" made by Tobias, and the summary judgment evidence conclusively establishes that no such promise was made. Tobias provided the policy requested that had identical coverage to the prior policy. No promises, express or implied, were made regarding what that coverage may entail.

E. Breach of Duty of Good Faith and Fair Dealing

29. All facts, arguments, and authorities cited in all preceding paragraphs are incorporated herein by reference as if fully set forth.

30. The Plaintiff's breach of the duty of good faith and fair dealing claim likewise does not appear to be directed toward Tobias. "There is no need to extend the duty of good faith and fair dealing owed by insurance carriers to their insureds to include agents or contractors of the insurance carrier." *Natividad c. Alexis, Inc.*, 875 S.W.2d 695, 700 (Tex. 1994). The duty of good faith and fair dealing applies when there is a special relationship between parties and the

relationship is based on "trust or unequal bargaining power." *Id.* at 697. Normally, an agent merely owes the insured the standard *May* duty to use reasonable diligence in obtaining the policy requested by the insured. *May*, 844 S.W.2d at 669.

31. In this case, after purchasing the initial policy over the phone in June of 2021, Mrs. Brewer spent around ten to fifteen minutes on the phone with Tobias while purchasing Plaintiff's second policy.[33] She later called Tobias a few times for help accessing their website.[34] Apart from the numerous documents Golden Rule sent Plaintiff regarding the specifics of his policies, which he disregarded, these brief phone calls are the only communication between Plaintiff and any of the Defendants until Plaintiff's claim was denied. The summary judgment evidence depicts a typical arms-length relationship between Plaintiff and Tobias. Therefore, the duty of good faith and fair dealing does not apply in this case.

F. Civil Conspiracy

32. All facts, arguments, and authorities cited in all preceding paragraphs are incorporated herein by reference as if fully set forth.

33. A civil conspiracy claim must include: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Vizza Wash, LP v. Nationwide Mut. Ins. Co.*, 496 F. Supp. 3d 1029, 1042 (W.D. Tex. 2020) (citing *Apani Sw., Inc. v. Coca-Cola Enters, Inc.*, 300 F.3d 620, 635 (5th Cir. 2002). As a derivative tort, civil conspiracy depends on the defendant's participation in an underlying tort. *Id.* To prove the "meeting of the minds" element, a plaintiff must demonstrate a "preconceived plan and unity of design and purpose." *Goldstein v. Mortenson*, 114 S.W.3d 769, 779 (Tex. App.—Austin 2003, no pet.). Here, as demonstrated above,

---

[33] *See* deposition of Ann Brewer hereto attached as ***Exhibit "B"***, page 111, lines 4-25; page 112, lines 1-2.
[34] *Id.* at page 27, lines 3-15.

each of Plaintiff's common law causes of action fail, and therefore Tobias did not commit an underlying tort necessary for the basis of a civil conspiracy charge. Furthermore, there is no evidence that there was a meeting of the minds between the defendants.

G. Statutory Claims under the Texas Insurance Code and the DTPA

i. Violations of the Texas Deceptive Trade Practices Act

34. All facts, arguments, and authorities cited in all preceding paragraphs are incorporated herein by reference as if fully set forth.

35. To succeed in a DTPA action a plaintiff must prove that: (1) they are a consumer, (2), the defendant engaged in false, misleading, or deceptive acts, and (3) these acts constituted a producing cause of the plaintiff's damage. *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995).

36. The issue in this case is whether the Defendant's conduct would be false, misleading, or deceptive. Texas cases have routinely held that, absent an affirmative, specific misrepresentation, an insured's incorrect belief regarding the scope of their policy's coverage is not actionable under Texas's Deceptive Trade Practices Act ("DTPA") or the TEXAS INSURANCE CODE. *Wyly v. Integrity Ins. Solutions*, 502 S.W.3d 901, 908 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (citing *Moore v. Whitney-Vaky*, 966 S.W.2d 690, 692 (Tex. App.—San Antonio 1998, no pet). Under the DTPA and the TEXAS INSURANCE CODE, absent fraud, an insurance agent does not need to disclose the terms of a plainly worded policy. *Celestino v. Mid-American Indem. Ins. Co.*, 883 S.W.2d 310, 316 (Tex. App.—Corpus Christi 1994, writ denied).

37. Generally, courts have found affirmative misrepresentation under the DTPA when an insurer or an agent made a representation contrary to the written policy or verbally confirmed specific coverage to the insured that was not within the scope of the policy. *See also Royal Globe*

*Insurance Company v. Bat Consultants, Inc.*, 577 S.W.2d 688, 694 (Tex. 1979) (finding misrepresentation where insurance agent explicitly told insured that his business was covered from vandalism when it was not). An agent using imprecise or unclear language and making "vague representations" is not actionable under the DTPA. *Wyly*, 205 S.W.3d at 908 (citing *Bank One, Tex., N.A. v. Little*, 978 S.W.2d 272, 280 (Tex. App.—Fort Worth 1998, pet. denied).

38. Plaintiff alleges misrepresentation under three subsections within §17.46(b) of the DTPA: §17.46(b)(5), alleging Tobias represented "that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have"; §17.46(b)(7), alleging Tobias "represented that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, and are of another"; and §17.46(b)(12), alleging Tobias represented "that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law." There is no evidence that Tobias ever made such representations, and the summary judgment evidence conclusively establishes that Tobias never made any affirmative, specific representations regarding what was covered or not covered under the second Golden Rule policy. Neither Plaintiff nor his mother asked Tobias about the second policy's coverage, other than requesting a policy with the same coverage as the first policy. Plaintiff's incorrect belief that his second policy, for whatever reason, would cover his preexisting condition is not actionable under the DTPA.

39. Plaintiff also alleges that Tobias "failed to disclose information concerning goods or services which was known at the time of the transaction [and that] such failure to disclose such information was intended to induce [Plaintiff] into a transaction into which [Plaintiff] would not have entered had the information been disclosed" under §17.46(b)(24) of the DTPA. Tobias was under no duty to disclose the plain language of the policy. *Celestino*, 883 S.W.2d at 316. Though

the common law duty to read does not apply in a statutory claim, absent fraud or affirmative misrepresentation, an agent has no duty to disclose policy terms that are plainly worded. *Id.* Here, the policy that Plaintiff signed in multiple places plainly laid out that the policy was short-term, not a continuation of a prior policy, and that subsequent policies would not cover preexisting conditions.[35]

40. Next, Plaintiff alleges that Tobias and Mr. Davis caused "confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services" under §17.46(b)(2) of the DTPA. Plaintiff does not specify in what ways he was confused about any of the source, sponsorship, approval, or certification of the policy Tobias procured for him, nor does he allege that the policy had a different source, sponsorship, approval, or certification than what Plaintiff initially understood. Regardless, Tobias and Mr. Davis made no misrepresentations that would confuse the policy.

41. Finally, Plaintiff alleges false advertising under §17.46(b)(9) but proffers no evidence that Tobias advertised this specific plan to the public, that Plaintiff saw or relied on such advertising, that the advertising was false or deceptive, or any other detail regarding any such advertising. Tobias procured the product requested, that being a policy with the same coverage as contained within the first Golden Rule policy.

ii. Violations of the Texas Insurance Code

42. All facts, arguments, and authorities cited in all preceding paragraphs are incorporated herein by reference as if fully set forth.

43. Plaintiff has asserted claims against Tobias pursuant to TEXAS INSURANCE CODE §541.051, §541.052, §541.060, §541.061, and §542.003. All of those claims are largely the same – that

[35] *See* Second Golden Rule Application, attached hereto as ***Exhibit "D"***, page 4.

Tobias made a misrepresentation or somehow misled the Plaintiff:

§541.051 Tobias made, issued, or circulated a statement misrepresenting the insurance policy issued to Plaintiff;

§541.052 Tobias made a statement to Plaintiff that contained an untrue, deceptive, or misleading representation regarding the business of insurance, generally, and specifically regarding the second Golden Rule policy;

§541.060 Tobias misrepresented to Plaintiff a material fact or policy provision by representing that the second Golden Rule policy had the same coverage as Plaintiff's first policy;

§541.061 Tobias made an untrue statement of material fact; and

§542.003 Tobias knowingly misrepresented to Plaintiff pertinent facts or policy provisions relating to the coverage at issue.

44. The guiding law from *Wyly* and *Celestino* applies to both the DTPA and the TEXAS INSURANCE CODE. Tobias made no affirmative, specific misrepresentations to Plaintiff regarding any aspect of coverage. Plaintiff's primary allegation under the TEXAS INSURANCE CODE is that Tobias did not procure a policy with the same coverage as Plaintiff's first Golden Rule policy. However, as admitted by the Plaintiff, this is simply not the case. Mr. Brewer has testified that there was no difference between the two policies other than deductible and the term.[36] As repeatedly stated and conclusively established herein, the first and second Golden Rule policies were identical in terms of the coverage provided (and neither of them covered pre-existing conditions).

45. If the Plaintiff is to be believed, he thought, for whatever reason, that his cancer treatments would be covered under the second Golden Rule policy. Such a belief did not stem from any representation made by Tobias. As noted above, Mr. Brewer ***never*** communicated with Tobias, his mother (acting on his behalf) never asked whether there would be coverage under the second

---

[36] *See* Deposition of Michael Brewer, attached hereto as ***Exhibit "A"***, page 101, lines 17-20.

policy for urology appointments[37], medical bills stemming from his orchiotomy,[38] or his cancer treatments,[39] and Tobias never represented that any of those medical appointments would be covered.[40]

46. In addition to alleging misrepresentation, Plaintiff's claim under Texas Insurance Code §541.061(2) alleges that Tobias failed to state a material fact necessary to make other statements not misleading, and under §541.061(5) alleging that Tobias failed to disclose a matter required by law to disclose. Here, Tobias had no duty to disclose absent an affirmative misrepresentation. *Celestino*, 883 S.W.2d at 316. Since Tobias did not make an affirmative misrepresentation, there is no duty to disclose, thus those allegations fail.

47. Plaintiff alleges under §541.061(3), that Tobias made "a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact." Plaintiff asked for the same coverage in the second policy and Tobias procured a policy with the same coverage. Tobias made a representation that the coverage was the same, it is a true statement. Tobias made no representations regarding coverage for any specific condition, pre-existing or otherwise.

48. Assuming that a statement of any kind was made, and even if the language is unclear and confusing, if it points the insured to the documents that provide a clearer explanation of coverage the language is not misleading. *Ostrovitz & Gwinn, LLC v. First Specialty Ins. Co.*, 393 S.W.3d 379, 395 (Tex. App.—Dallas 2012, no pet.) Here, the very document that Plaintiff signed to obtain the policy clearly explained the coverage in layman's terms and explicitly excluded coverage for pre-existing conditions.[41]

---

[37] *See* Deposition of Ann Brewer, attached hereto as ***Exhibit "B"***, page 170, lines 7-9.
[38] *Id.* at page 169, line 25; page 170, lines 1-6.
[39] *Id.* at page 169, lines 21-24.
[40] *Id.* at page 170, lines 10-17.
[41] *See* Golden Rule Application Two attached hereto as ***Exhibit "D"***, Bates Nos. TOBIAS 000058-59.

## *VII.*
## ***Conclusion and Prayer***

49. Defendant Tobias & Associates, Inc. D/B/A getmehealthcare is entitled to summary judgment with respect to all claims and causes of action of Plaintiff herein. This is a simple issue. Defendant owed a duty to Plaintiff to procure or assist in procuring the insurance policy Plaintiff specifically requested. Defendant did so. If different coverage was needed, Plaintiff had ample opportunity to review applications, policy descriptions, and policy documents. Instead, Plaintiff failed to read or review anything, and as such was unaware of the pre-existing condition clause. Absent any misrepresentation about coverage provided under the Golden Rule policies, or other act giving rise to tortious conduct, all of Plaintiff's claims, from negligent misrepresentation to violation of the Texas Insurance Code, fail. There is no genuine issue of material fact regarding the conduct of Defendant in complying with the limited duty it owed to Plaintiff under Texas law. Accordingly, Defendant respectfully requests that all claims and causes of action of Plaintiff against it be dismissed with prejudice.

WHEREFORE, PREMISES CONSIDERED, Defendant, TOBIAS & ASSOCIATES, INC. D/B/A getmehealthcare. pray that its Traditional Motion for Final Summary Judgment be, in all things GRANTED, that all claims of Plaintiff against Defendant be dismissed with prejudice, that Defendant recover its costs, and for such other and further relief, both general and specific, at law and in equity, to which it may show itself to be justly entitled.

Respectfully submitted,

**RYMER, ECHOLS, SLAY, & NELSON-ARCHER, P.C.**

By: ______________________________
Clinton J. Echols
State Bar No. 00790625
2801 Post Oak Blvd., Suite 250
Houston, Texas 77056
Telephone: (713) 626-1550
Facsimile: (713) 626-1558
Email: cechols@resnlaw.com

**ATTORNEY IN CHARGE FOR DEFENDANT, TOBIAS & ASSOCIATES, INC. D/B/A getmehealthcare**

## CERTIFICATE OF SERVICE

I hereby certify that I have caused a true and correct copy of the foregoing instrument to be served upon the following counsel of record herein via CM/ECF on this 10th day of July, 2023.

Andrew J. Cobos
Nicholas Kacal
THE COBOS LAW FIRM
711 W. Alabama Street
Houston, Texas 77006
*Counsel for Plaintiff*

______________________________
Clinton J. Echols