**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **Michael Brewer,** *Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **Golden Rule Insurance Company and Tobias & Associates, Inc. d/b/a getmehealthcare** *Defendants.* | § | **Civil Action No. 4:22-cv-00969** |
| | § | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT TOBIAS & ASSOCIATES, INC. D/B/A GETMEHEALTHCARE'S MOTION FOR FINAL SUMMARY JUDGMENT**

NOW COMES Plaintiff Michael Brewer, who files this Response in Opposition to Defendant Tobias & Associates, Inc. d/b/a getmehealthcare's Motion for Final Summary Judgment (the "Motion") and would respectfully show this Court as follows:

## I. SUMMARY OF THE DISPUTE

1. Plaintiff Michael Brewer purchased a health insurance policy from Golden Rule Insurance Company through Tobias & Associates, Inc. d/b/a getmehealthcare (hereinafter, Defendant "Tobias" or "Tobias & Associates") on June 9, 2021.[1] The term of the insurance policy was scheduled to expire in December 2021.[2]

2. On June 14, 2021, Mr. Brewer attended a medical appointment with R. Robert Dirh, MD of HTX Urology to discuss a suspected UTI infection.[3] Dr. Dirh prescribed Mr. Brewer anti-biotics to treat the suspected infection, However, Plaintiff's symptoms continued to worsen

---

[1] *See* Deposition of Michael Brewer, Feb. 20, 2023, at 12:9-22, "Exhibit A"
[2] *See Id.* at 128:3-14.
[3] *See Id.* at 102:11-17.

necessitating an operation to remove his testicle on October 21, 2021.[4]

3. Shortly after the operation, on November 3, 2021, Mr. Brewer, through his mother Carolyn Ann Brewer, received a notification from Christopher Davis of Defendant Tobias & Associates informing him that the term of his current medical insurance policy was approaching.[5] The solicitation email stated three separate times that Mr. Brewer's policy could be renewed and specifically stated that "If [Mr. Brewer] would like to renew [his] current plan at the same level of coverage, [Christopher Davis] can resend the electronic signature via text or email."[6]

> On Wednesday, November 3, 2021, 9:14 PM, Chris Davis <cdavis@getmehealthcare.com> wrote:
>
> Dear Client,
>
> I wanted to reach out as your UnitedHealthcare medical insurance policy is coming to it's expiration/renewal date. In order to renew this coverage or explore alternative carrier options, please contact me directly via email or phone at 561-910-4194. If you would like to renew your current plan at the same level of coverage, I can resend the electronic signature via text or email. Please, do not hesitate to reach out if you have any questions.
>
> Thank you in advance,
>
> --
> **Christopher Davis**
> **Licensed Agent / Client Relations Specialist**
>
> **P 561-910-4194**
> **E** cdavis@getmehealthcare.com

*Image 1: Christopher Davis Email Soliciting Renewal of Brewer Policy, Nov. 3, 2021, "Exhibit B".*

4. On November 5, 2021, Ms. Carolyn Ann Brewer, Michel Brewer's mother, contacted Christopher Davis on Michael's behalf at the (561) 910-4194 phone number provided in the November 3, 2021 solicitation email.[7] During this call, Ms. Brewer requested a renewal of Michael's previous policy.[8] Ms. Brewer also informed Mr. Davis that Michael had recently

---

[4] *See Id.* at 132:18-133:1.
[5] *See* Christopher Davis Email Soliciting Renewal of Brewer Policy, Nov. 3, 2021, "Exhibit B".
[6] *Id.*
[7] *See* Deposition of Carolyn Ann Brewer, Feb 21, 2023, at 78:17-80:12, "Exhibit C"; *see also* Deposition of Michael Brewer, Feb. 20, 2023, at 34:4-14, 164:4-19, "Exhibit A"
[8] *Id.*

underwent surgery and would need ongoing care related to Michael's underlying condition.[9] Mr. Davis specifically informed Ms. Brewer that Michael's policy would be renewed and would provide the same coverage as Michael's previous policy.[10] An e-signature link was forwarded to Michael on the evening of November 5, 2021 and the application for Golden Rule Policy ID No. 096-540-158 was submitted that same day.[11]

5. On November 15, 2021, Mr. Brewer received news from Dr. Dihr that his symptoms were being caused by testicular cancer.[12] Mr. Brewer attended an appointment at MD Anderson Cancer Center with Dr. Matthew Campbell on December 1, 2021, where he was immediately admitted for in-patient treatment.[13] Mr. Brewer was informed by Golden Rule Insurance Company and Tobias & Associates that his treatment would be covered under Golden Rule Policy ID No. 096-422-291.[14] While admitted to MD Anderson Cancer Center, the term of Golden Rule Policy ID No. 096-422-291 expired and Golden Rule Insurance Company issued Golden Rule Policy ID No. 096-540-158 to Mr. Brewer on December 12, 2021.[15]

6. On January 25, 2022, Mr. Brewer received correspondence from Golden Rule Insurance Company stating that the expenses related to Mr. Brewer's cancer treatment would not be covered under Golden Rule Policy ID No. 096-540-158 as Golden Rule considered the condition(s) related to this treatment to be "preexisting as defined by your plan's coverage under ID Number 096-540-158, since they were incurred prior to the effective date of this plan."[16]

---

[9] *Id.*
[10] *See Id.* at 17:8-24, 28:18-29:1, 78:2-12, 79:7-20, 107:8-24; 109:1-15, 165:7-11.
[11] *See* Deposition of Michael Brewer, Feb. 20, 2023, at67:23-68:6, "Exhibit A".
[12] *See Id.* at 64:23-65:9.
[13] *See* Golden Rule Insurance Company Explanation of Benefits to Michael Brewer, December 2021, "Exhibit D".
[14] *See* Deposition of Michael Brewer, Feb. 20, 2023, at67:23-68:6, "Exhibit A".
[15] *See Id.* at 88:15-24, 116:23-117:25.
[16] *See* Golden Rule Insurance Company Denial Letter, Jan. 25, 2022, "Exhibit E".

7. Defendant Tobias & Associates, Inc.'s services were engaged for the purpose of clarifying such issues and assisting Mr. Brewer selecting and applying for/renewing a medical insurance policy.[17] During the process of completing and submitting the relevant application, Defendant Tobias & Associates fact advised and counseled Mr. Brewer that Golden Rule Policy ID No. 096-540-158 would be a renewal of, and provide the same coverage as, Golden Rule Policy ID No. 096-422-291.[18] Christopher Davis's fraudulent misrepresentations in soliciting and processing sale of the insurance policy at issue misled Mr. Brewer into believing that he had obtained a renewal of his medical insurance, which would provide the same coverage as his previous policy, when in fact it did not.[19]

---

[17] *See* Deposition of Carolyn Ann Brewer, Feb 21, 2023, at 17:8-24, 28:18-29:1, 39:23-40:11, 78:2-12, 79:4-80:12, 107:8-24; 109:1-15, 165:7-1, "Exhibit C".

[18] *See Id.* at 17:8-24, 28:18-29:1, 78:2-12, 79:7-20, 107:8-24; 109:1-15, 165:7-11.

[19] *See* Deposition of Michael Brewer, Feb. 20, 2023, at 56:6-16, 57:21-24, 30:19-31:1, 31:19-32, 126:10-17, "Exhibit A"; *see also* Deposition of Carolyn Ann Brewer, Feb 21, 2023, at 28:18-29:1 15:25-16, 17:8-24, 17:25-18:15, 18:19-19:13, 19:14-22, 20:5-15, 22:23-23:3, 23:19-22, 25:5-14, 25:20-26, 27:3-15, 30:6-23, 78:2-12, 79:7-20, 101:9-13, 105:19-106-6, 107:8-24, 109:1-15, 111:11-17, 135:13-22, 141:3-9, 164:19-22, 165:7-11; 169:11-20; 170:10-15, "Exhibit C"; *see also* Deposition of Christopher Davis, Feb. 23, 2023, at 27:16-28:14, 36:4-25, 44:3-15, 79:2-80:12, 112:13-25, 122:6-25; 166:14-20, "Exhibit F"; *see also* Golden Rule Insurance Company Denial Letter, Jan. 25, 2022, "Exhibit E".

# TABLE OF CONTENTS

**SUMMARY OF DISPUTE……………………………………………………………..1**
**TABLE OF CONTENTS…………………………………………………………….....5**

**TABLE OF AUTHORITIES..........................................................................................10**

**ARGUMENT & AUTHORITIES……………..……………………………………11**

A. Summary Judgment Standard ...................................................................**11**

B. Duties Owed to an Insured by an Insurance Agent Under Texas Law……….**12**

C. Plaintiff Has Presented Evidence Showing a Disputed Issue of Material Fact Regarding All Challenged Claims………….……………..…………………**13**

i. Defendant Tobias Recklessly Misrepresented Coverage Afforded by the Second Policy and Plaintiff's Claim for Negligent Misrepresentation is Supported by Admissible Evidence ……..……………………………..**14**

ii. Defendant Tobias Recklessly Misrepresented Coverage Afforded by the Second Policy and Plaintiff's Claims for Fraud and Fraud by Nondisclosure are Supported by Admissible Evidence ……………………..………………**17**

iii. Defendant Tobias' Misrepresentations Violate the Texas Deceptive Trade Practices Act ……………..……………………………………….……...**20**

a. Misrepresentations Constituting Violations of the DTPA...………...**21**

b. Failures to Disclose Constituting Violations of the DTPA ..……..…**23**

c. Causing Confusion as to Approval Constituting Violations of the DTPA………………………………………………………….... **24**

d. False Advertising Constituting Violations of the DTPA……….…..**25**

iv. Defendant Tobias' Misrepresentations Violate the Texas Insurance Code………………………………………………………………...**26**

a. Misrepresentations Constituting Violations of the Tex. Ins. Code...……………………………………………………………**27**

b. Failures to Disclose Constituting Violations of the Tex. Ins. Code..……………………………………………………………**28**

v. Plaintiff has Asserted Valid Underlying Torts to Support His Claims for Civil Conspiracy……………………………………………………………..**32**

vi. Plaintiff's Claims for Promissory Estoppel and Breach of Duty of Good Faith and Fair Dealing Are Not Asserted Against Defendant Tobias & Associates…………………………………………………………...**32**

**PRAYER ................................. ……………………………………………………….32**

**CERTIFICATE OF SERVICE… .....................................................................................33**

**APPENDIX………………………………………………………………………………..34**

# TABLE OF AUTHORITIES


Federal Rule of Civil Procedure 56(c)…………………………………………………….….**11**

Tex. Bus. Comm. Code § 17.46(b)(5)……………………………………………………...**21**

Tex. Bus. Comm. Code § 17.46(b)(7)……………………………………………………...**22**

Tex. Bus. Comm. Code § 17.46(b)(12)……………………………………………………**23**

Tex. Bus. Comm. Code § 17.46(b)(24)…………………………………………………**23-24**

Tex. Ins. Code § 541.051……………………………………………………………….……**28**

Tex. Ins. Code § 541.052……………………………………………………………….……**28**

Tex. Ins. Code § 541.060…………………………………………………………………..…**28**

Tex. Ins. Code § 541.061(2)………………………………………………………….………**29**

Tex. Ins. Code § 541.061(5)……………………………………………………….…………**30**

Tex. Ins. Code § 541.084(a)…………………………………………………………….……**30**

Tex. Ins. Code § 542.003…………………………………………………………….….……**28**

*Automobile Ins. Co. v. United Elec. Serv. Co*., 275 S.W.2d 833, 839 (Tex. Civ. App.—Ft. Worth 1955, writ ref'd n.r.e.)……………………………………………………………………....**13**

*Black v. Victoria Lloyds Ins. Co*., 797 S.W.2d 20 (Tex. 1990)…………………………………**16**

*Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993)……………………………....**6**

*Bradford v. Vento*, 48 S.W.3d 749, 755, 44 Tex. Sup. J. 655 (Tex. 2001)………………………**18**

*Brown & Brown of Tex., Inc. v. Omni Metals, Inc.*, 317 S.W.3d 361, 384–398 (Tex. App.—Houston [1st Dist.] 2010)……………………………………………………………………..**23**

*Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2552 (1986).……………………………..…………**11**

*Colonial County Mut. Ins. Co. v. Valdez*, 30 S.W.3d 514, 521 (Tex. App.—Corpus Christi 2000, no pet.)…………………………………………………………………………………………...**29**

*Colonial Sav. Ass'n v. Taylor,* 544 S.W.2d 116, 199 (Tex. 1976)……………………………….**15**

*Del. Ins. Co. v. Hill,* 127 S.W. 283, 286-87 (Tex. Civ. App. 1910, writ ref.)…………………...**15**

*Doctors Hosp. at Renaissance, Ltd. v. Emplrs Ins. Co*., 579 F. Supp. 3d 912, 922 (S.D. Tex. 2022)……………………………………………………………………………………..**12**

*Fireman's Fund Indem. Co. v. Boyle Gen. Tire Co.,* 392 S.W.2d 352, 355 (Tex. 1965)………..**15**

*Garrison Contractors, Inc. v. Liberty Mut. Ins. Co.,* 927 S.W.2d 296, 300 (Tex. App.—El Paso 1996), aff'd, 966 S.W.2d 482 (Tex. 1998)…………………………………………………………**24**

*Hoggett v. Brown*, 971 S.W.2d 472, 487 (Tex. App.—Houston [14th Dist.] 1997, pet. denied)..**18**

*Houston Fire & Cas. Ins. Co. v. Pritchard & Abbott*, 155 Tex. 120, 283 S.W.2d 728, 730 (1955)……………………………………………………………………………………………**13**

*Ins. Network of Tex. v. Kloesel*, 266 S.W.3d 456, 478 (Tex. App.-Corpus Christi 2008, pet. filed)…………………………………………………………………………………..**14-16**

*Landers v. Aurora Loan Services, LLC*, 434 S.W.3d 291 (Tex. App.—Texarkana 2014, no pet.)…………………………………………………………………………………………**20**

*Mag-Dolphus, Inc. v. Ohio Cas. Ins. Co*., 40 F. Supp. 3d 817, 838 (S.D. Tex. 2014)…………..**13**

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)……………...**11**

*May v. United Services Ass'n*, 844 S.W.2d 666, 669 (Tex. 1992)………………………………**12**

*McKillip v. Employers Fire Ins. Co*., 932 S.W.2d 268, 270 (Tex. App.—Texarkana 1996, no writ)…………………………………………………………………………………………**12**

*McNeill v. McDavid Ins. Agency*, 594 S.W.2d 198, 203 (Tex. Civ. App.—Ft. Worth 1980, no writ)…………………………………………………………………………………………**13**

*Moore v. Whitney-Vaky Ins. Agency*, 966 S.W.2d 690, 692 (Tex. App.—San Antonio 1998, no pet.)…………………………………………………………………………………………**12**

*Omni Metals v. Poe & Brown of Tex*., NO. 14-00-01081-CV, 2002 Tex. App. LEXIS 4334 (Tex. App. June 13, 2002)…………………………………………………………………………..**18**

*Rice v. Metro. Life Ins. Co*., 324 S.W.3d 660, 674-75 (Tex. App.—Fort Worth 2010, no pet.)...**24**

*Royal Globe Ins. Co. v. Bar Consultants, Inc*., 577 S.W.2d 688, 693–694 (Tex. 1979)………...**23**

*RZQ, L.L.C. v. McClelland & Hine, Inc.*, 2021 Tex. App. LEXIS 2813, *36 (Tex. App.—Corpus Christi 2021, pet. denied)…………………………………………………………………...**12**

*Schustrin v. Globe Indem. Co*., 44 N.J. Super. 462, 130 A.2d 897 (N.J. Super. Ct. App. Div. 1957))……………………………………………………………………………………….**15**

*Smith v. Nat'l Resort Cmty., Inc.,* 585 S.W.2d 655, 658 (Tex. 1979)……………………………**18**

*Sonic Sys. Int'l v. Croix*, 278 S.W.3d 377, 393 (Tex. App.—Houston [14th Dist.] 2008)]……..**37**

*Spurlock v. Beacon Lloyds Ins. Co.*, 494 S.W.3d 148, 155 (Tex. App.—Eastland 2015, pet. denied)……………………………………………………………………………………………**12**

*Taylor v. Republic Grocery*, 483 S.W.2d 293, 296 (Tex. Civ. App.—El Paso 1972, no writ)….**12**

*Windham v. Harris County, Tex*., 875 F.3d 229, 234 (5th Cir. 2017)…………………………...**12**

*Wyly v. Integrity Ins. Sols*., 502 S.W.3d 901, 911, 912 (Tex. App. 2016)…………………..**21, 27**

## II. SUMMARY OF ISSUES TO BE RULED UPON

1. Plaintiff was denied medical insurance benefits for life-sustaining treatment after the fraudulent misrepresentations of Defendant Tobias and Associates, Inc. misled Mr. Brewer into believing that he had obtained a renewal of his medical insurance, which would provide the same coverage as his previous policy, when in fact it did not.

2. Defendant Tobias & Associates, Inc. filed its Motion for Final Summary Judgment on July 10, 2023 arguing that Tobias & Associates, Inc. was never told about the Plaintiff's cancer diagnosis, never made any representations regarding whether coverage for medical treatment related to this condition would or would not be provided under the second policy, and that Texas law definitively negates all of Plaintiff's causes of action.[20] However, Tobias was informed during the application process that: 1) Plaintiff had received a recent surgery[21]; 2) there had been suspicions Plaintiff's symptoms could be related to cancer;[22] and 3) Plaintiff anticipated the need for ongoing treatment.[23] Furthermore, after receiving this information Tobias stated to Plaintiff that Plaintiff's policy would be renewed and would provide the same coverage he enjoyed under his previous policy.[24] Plaintiff relied upon these misrepresentations to his detriment[25] by paying

---

[20] *See* Dkt. No. 27 at ¶ 3.
[21] *See* Deposition of Carolyn Ann Brewer, Feb 21, 2023 at 17:25-18:15, 18:19-19:13, 169:11-20, "Exhibit C"*; see also* Deposition of Christopher Davis, Feb. 23, 2023, at 120:13-22, 121:4-7, 122:6-25, 124:24-125:3, 166:14-20, "Exhibit F".
[22] *See* Deposition of Carolyn Ann Brewer, Feb 21, 2023, at 18:19-19:13, 169:11-20, "Exhibit C"; *see also* Deposition of Christopher Davis, Feb. 23, 2023, at 120:13-22, 121:4-7, 122:6-25, 124:24-125:3, 166:14-20, "Exhibit F".
[23] *See* Deposition of Carolyn Ann Brewer, Feb 21, 2023, at 18:19-19:13, 8:18-29:1, "Exhibit C".
[24] *See Id.* at 17:8-24, 28:18-29:1, 78:2-12, 79:7-20, 107:8-24; 109:1-15, 165:7-11.
[25] *See* Deposition of Michael Brewer, Feb. 20, 2023, at 56:6-16, 57:21-24, 30:19-31:1, 31:19-32, 126:10-17, "Exhibit A"; *see also* Deposition of Carolyn Ann Brewer, Feb 21, 2023, at 28:18-29:1 15:25-16, 17:8-24, 17:25-18:15, 18:19-19:13, 19:14-22, 20:5-15, 22:23-23:3, 23:19-22, 25:5-14, 25:20-26, 27:3-15, 30:6-23, 78:2-12, 79:7-20, 101:9-13, 105:19-106-6, 107:8-24, 109:1-15, 111:11-17, 135:13-22, 141:3-9, 164:19-22, 165:7-11; 169:11-20; 170:10-15, "Exhibit C"; *see also* Deposition of Christopher Davis, Feb. 23, 2023, at 27:16-28:14, 36:4-25, 44:3-15, 79:2-80:12, 112:13-25, 122:6-25; 166:14-20, "Exhibit F".

premiums on an ineffective policy which led him to incur substantial medical payments for which he had no coverage.[26]

3. Genuine issues of material fact remain in this case and Plaintiff has evidence to support each element of his claims. For these reasons, Defendant Tobias & Associates, Inc. d/b/a getmehealthcare's Motion for Final Summary Judgment should be denied.

4. Docket call in this matter is set to be held at 11:30 AM on October 2, 2023.[27]

## III. ARGUMENTS AND AUTHORITIES

5. Defendant Tobias & Associates had a duty to truthfully represent the insurance products it solicited to Plaintiff and breached that duty by making material misrepresentations and failing to disclose facts material to the insurance product for which Defendant was engaged to procure. For all of the reasons detailed below, Defendant Tobias & Associates, Inc. d/b/a getmehealthcare's Motion for Final Summary Judgment should be denied and this case should proceed to trial.

### A. Summary Judgment Standard

6. The standard of review applicable to a summary judgment under Rule 56 is well known to the Court. A court may grant summary judgment when the evidence shows that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.[28] Initially, the movant must present the basis for the motion and the elements of the causes of action upon which the nonmovant is unable to establish a genuine issue of material fact.[29] The burden then shifts to the nonmovant to identify specific facts demonstrating a genuine issue for trial.[30] A dispute of "material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for

---

[26] *See* MD Anderson Cancer Center Billing Summary, Dec. 1, 2021 through Oct. 20, 2022, "Exhibit G"; *see also* MD Anderson Cancer Center Summary by Account Detail, Dec. 1, 2021 through Dec. 30, 2022, "Exhibit H"; *see also* Deposition of Carolyn Ann Brewer, Feb 21, 2023, at 27:19-28:9, 153:3-9, "Exhibit C".
[27] *See* Dkt. No. 16 at p. 1.
[28] Fed. R. Civ. P. 56(c).
[29] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[30] *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

the nonmoving party."[31] The Court should view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor.[32]

**B. <u>Duties Owed to an Insured by an Insurance Agent Under Texas Law.</u>**

7. The Texas Insurance Code expressly states who is an agent under Texas law. An insurer's agent is defined as any person who: (1)Solicits insurance on behalf of an insurance company; (2)Transmits an application or policy to or from an insurance company; (3)Receives or delivers a policy on behalf of an insurance company; (4)Examines or inspects any risk; (5)Receives, collects, or transmits an insurance premium; or (6)Adjusts a loss on behalf of an insurance company.[33]

8. To establish an insurance agent's breach of duty to an insured, a plaintiff must be able to show that he or she requested a specific type of insurance that the agent did not provide in accordance with the plaintiff's expectations or that the plaintiff was wrongly led to believe that his or her policy provided protection against a particular risk when it did not.[34] The request of a client for a specific kind of insurance gives rise to the agent's duties.[35] An insurance agent who undertakes to procure insurance for another owes a duty to a client to use reasonable diligence in attempting to place the requested insurance and to inform the client promptly if unable to do so.[36] The proper measure of damages is the amount that would have been due under the policy if it had been obtained, less the cost of the policy.[37]

---

[31] *See Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993).
[32] *See Windham v. Harris County, Tex*., 875 F.3d 229, 234 (5th Cir. 2017).
[33] *McKillip v. Employers Fire Ins. Co*., 932 S.W.2d 268, 270 (Tex. App.—Texarkana 1996, no writ), *citing* Tex. Ins. Code art. 21.02 and *Celtic Life Ins. Co. v. Coats*, 885 S.W.2d 96, 98 n.3 (Tex. 1994).
[34] *Doctors Hosp. at Renaissance, Ltd. v. Emplrs Ins. Co*., 579 F. Supp. 3d 912, 922 (S.D. Tex. 2022).
[35] *Spurlock v. Beacon Lloyds Ins. Co*., 494 S.W.3d 148, 155 (Tex. App.—Eastland 2015, pet. denied).
[36] *May v. United Services Ass'n*, 844 S.W.2d 666, 669 (Tex. 1992); *see also Moore v. Whitney-Vaky Ins. Agency*, 966 S.W.2d 690, 692 (Tex. App.—San Antonio 1998, no pet.) (court was unwilling to extend agent liability beyond affirmative misrepresentations to failures to disclose policy coverage limitations); *Sonic Sys. Int'l v. Croix*, 278 S.W.3d 377, 393 (Tex. App.—Houston [14th Dist.] 2008)].
[37] *See Taylor v. Republic Grocery*, 483 S.W.2d 293, 296 (Tex. Civ. App.—El Paso 1972, no writ); *see also RZQ, L.L.C. v. McClelland & Hine, Inc.*, 2021 Tex. App. LEXIS 2813, *36 (Tex. App.—Corpus Christi 2021, pet. denied) (an insurance broker is not immune from liability for misrepresentations concerning matters other than the extent of coverage under the proposed policy).

9. Insurance agents who misrepresent specific policy provisions can be held liable for negligent misrepresentation, violation of the Insurance Code, or violation of the DTPA if an insured relies on the misrepresentation and the misrepresentation actually causes damages.[38] If an agent agrees to apply for insurance on behalf of a customer, the agent has the duty either to explain the terms of the application form or to otherwise inform the customer of the coverages included in the application.[39] In Texas, an insured may instruct the agent to renew the policy, which becomes the offer accepted by the insurer's issuance of the renewal policy.[40] The insurer, through its agent, may orally agree to a renewal, presumed to be on the same terms, conditions, and amounts as the original policy.[41]

### C. <u>Plaintiff Has Presented Evidence Showing a Disputed Issue of Material Fact Regarding All Challenged Claims.</u>

10. Tobias was informed during the application process that: 1) Plaintiff had received a recent surgery[42]; 2) there had been suspicions Plaintiff's symptoms could be related to cancer;[43] and 3) Plaintiff anticipated the need for ongoing treatment.[44] Furthermore, after receiving this information and Plaintiff's request to renew Plaintiff's policy, Tobias represented to Plaintiff that Plaintiff's policy would be renewed and would provide the same coverage he enjoyed under his previous

[38] *Mag-Dolphus, Inc. v. Ohio Cas. Ins. Co*., 40 F. Supp. 3d 817, 838 (S.D. Tex. 2014).
[39] *McNeill v. McDavid Ins. Agency*, 594 S.W.2d 198, 203 (Tex. Civ. App.—Ft. Worth 1980, no writ).
[40] *Houston Fire & Cas. Ins. Co. v. Pritchard & Abbott*, 155 Tex. 120, 283 S.W.2d 728, 730 (1955).
[41] *Automobile Ins. Co. v. United Elec. Serv. Co*., 275 S.W.2d 833, 839 (Tex. Civ. App.—Ft. Worth 1955, writ ref'd n.r.e.).
[42] *See* Deposition of Carolyn Ann Brewer, Feb 21, 2023 at 17:25-18:15, 18:19-19:13, 169:11-20, "Exhibit C"; *see also* Deposition of Christopher Davis, Feb. 23, 2023, at 120:13-22, 121:4-7, 122:6-25, 124:24-125:3, 166:14-20, "Exhibit F".
[43] *See* Deposition of Carolyn Ann Brewer, Feb 21, 2023, at 18:19-19:13, 169:11-20, "Exhibit C"; *see also* Deposition of Christopher Davis, Feb. 23, 2023, at 120:13-22, 121:4-7, 122:6-25, 124:24-125:3, 166:14-20, "Exhibit F".
[44] *See* Deposition of Carolyn Ann Brewer, Feb 21, 2023, at 18:19-19:13, 8:18-29:1, "Exhibit C".

policy.[45] Plaintiff relied upon these misrepresentations to his detriment[46] by paying premiums on an ineffective policy which led him to incur substantial medical payments for which he had no insurance coverage.[47] Genuine issues of material fact remain in this case and Plaintiff has evidence to support each element of his claims. For these reasons, Defendant Tobias & Associates, Inc. d/b/a getmehealthcare's Motion for Final Summary Judgment should be denied.

**i. <u>Defendant Tobias Recklessly Misrepresented Coverage Afforded by the Second Policy and Plaintiff's Claim for Negligent Misrepresentation is Supported by Admissible Evidence.</u>**

11. Defendant Tobias argues that Plaintiff's claims for negligent misrepresentation must fail because Plaintiff was legally charged with the knowledge of what the second policy actually covered thus negating the essential element of reliance.[48] However, an insurance agent's client may rely on the agent to procure a policy that a reasonably prudent agent would procure.[49] Furthermore, when an agent knows the client's instructions regarding a desired policy, the client may assume that the agent will procure a policy in conformance with such knowledge.[50] Such reliance on an agent may overcome the presumption that an insured knows the contents of a policy.[51] Therefore, an insurance agent may be found liable for negligence in procuring a requested insurance policy.

---

[45] *See* Deposition of Carolyn Ann Brewer, Feb 21, 2023, at 15:25-16, 17:8-24, 19:14-22, 28:18-29:1, 30:6-23, 78:2-12, 79:7-20, 105:19-106-6, 107:8-24; 109:1-15, 165:7-11, 170:10-15, "Exhibit C"; *see also* Deposition of Christopher Davis, Feb. 23, 2023, at 112:13-25, 166:14-20, "Exhibit F".

[46] *See* Deposition of Michael Brewer, Feb. 20, 2023, at 56:6-16, 57:21-24, 30:19-31:1, 31:19-32, 126:10-17, "Exhibit A"; *see also* Deposition of Carolyn Ann Brewer, Feb 21, 2023, at 28:18-29:1 15:25-16, 17:8-24, 17:25-18:15, 18:19-19:13, 19:14-22, 20:5-15, 22:23-23:3, 23:19-22, 25:5-14, 25:20-26, 27:3-15, 30:6-23, 78:2-12, 79:7-20, 101:9-13, 105:19-106-6, 107:8-24, 109:1-15, 111:11-17, 135:13-22, 141:3-9, 164:19-22, 165:7-11; 169:11-20; 170:10-15, "Exhibit C"; *see also* Deposition of Christopher Davis, Feb. 23, 2023, at 27:16-28:14, 36:4-25, 44:3-15, 79:2-80:12, 112:13-25, 122:6-25; 166:14-20, "Exhibit F".

[47] *See* MD Anderson Cancer Center Billing Summary, Dec. 1, 2021 through Oct. 20, 2022, "Exhibit G"; *see also* MD Anderson Cancer Center Summary by Account Detail, Dec. 1, 2021 through Dec. 30, 2022, "Exhibit H"; *see also* Deposition of Carolyn Ann Brewer, Feb 21, 2023, at 27:19-28:9, 153:3-9, "Exhibit C".

[48] *See* Dkt. No. 27 at ¶ 22.

[49] *Ins. Network of Tex. v. Kloesel*, 266 S.W.3d 456, 478 (Tex. App.-Corpus Christi 2008, pet. filed).

[50] *Id*.

[51] *Id* at 476.

12. “An agent's client should be able to rely on the agent's knowledge in two respects. First, when the agent's knowledge is composed of his client's instructions regarding the qualities desired in a policy, the client may rightly assume that the agent will procure a policy in conformance with such knowledge. Second, the client may rightly assume that the agent will procure a policy that a reasonably prudent agent would procure--a policy that is reflective of the agent having exercised the appropriate degree of skill and knowledge that an agent is expected to have upon entering the profession.”[52]

13. "[A]n insured who accepts a policy without dissent, is presumed to know its contents, but the presumption may be overcome by proof that 'he did not know its contents when it was accepted, as by showing that when he received it he put it away without examination, or that *he relied upon the knowledge of the insurer and supposed he had correctly drawn it.*'"[53] When an insured presents sufficient proof to overcome the presumption, it then becomes the agent's "burden to prove that [the insured] was negligent in failing to read the policy."[54] If the fact-finder determines that the insured was not negligent, the insured's failure to read will not bar his recovery.[55]

14. In *Ins. Network of Tex. v. Kloesel*, the Thirteenth Court of Appeals found that evidence showing (1) the Plaintiffs did not read the policy for the 1997-1998 policy year, nor did they fully read the previous policies; (2) in the event that Plaintiff’s read any reference applicable exclusion in any binders or quotes provided the insurer, Plaintiffs did not comprehend or investigate its import; and (3) Plaintiffs’ decision to not take affirmative steps to familiarize themselves with the exclusion was predicated upon their reliance on their insurance agent’s knowledge and the

---

[52] *Ins. Network of Tex. v. Kloesel*, 266 S.W.3d 456, 478 (Tex. App. 2008).
[53] *Colonial Sav. Ass'n v. Taylor*, 544 S.W.2d 116, 199 (Tex. 1976) (quoting *Fireman's Fund Indem. Co. v. Boyle Gen. Tire Co*., 392 S.W.2d 352, 355 (Tex. 1965) (*quoting Del. Ins. Co. v. Hill*, 127 S.W. 283, 286-87 (Tex. Civ. App. 1910, writ ref.))) (*emphasis added*).
[54] *Id*. (*citing Schustrin v. Globe Indem. Co*., 44 N.J. Super. 462, 130 A.2d 897 (N.J. Super. Ct. App. Div. 1957)).
[55] Id.

assumption that he had procured a policy in conformance with said knowledge, overcame the presumption that Plaintiffs knew the contents of their policy, and it became the jury's task to determine whether the Plaintiffs' lack of knowledge resulted from their own negligence.[56]

15. The case of *Black v. Victoria Lloyds Ins. Co*., 797 S.W.2d 20 (Tex. 1990), is also analogous to the issue presented in the present case.[57] In *Black*, an employer purchased an automobile liability policy for a truck leased to it and used by an employee. The policy excluded coverage for accidents arising from personal use of the truck. The employee who used the truck did not receive a copy of the policy. Instead, he only received a card, which stated, "This policy complies with the compulsory auto laws of the State of Texas."[58] Further, the employee averred in an affidavit that through his payment of premiums, conversations with his employer, and the insurance card, he understood the insurance to cover personal use of the truck. Additionally, Victoria Lloyds had misrepresented that "complete liability insurance" had been provided.[59] Based on the card and the employee's affidavit, the Texas Supreme Court found that a fact issue existed "concerning misrepresentation of the liability insurance coverage for personal use."[60]

16. Here, Plaintiff Michael Brewer (1) did not receive or read any relevant policy;[61] (2) did not comprehend or investigate importance of pre-existing condition exclusion;[62] and (3) Plaintiff's

---

[56] *Ins. Network of Tex. v. Kloesel*, 266 S.W.3d 456, 479 (Tex. App. 2008).
[57] *See Black v. Victoria Lloyds Ins. Co*., 797 S.W.2d 20 (Tex. 1990).
[58] *Id*. at 24.
[59] *Id*. at 25.
[60] *Id*.
[61] *See* Deposition of Michael Brewer, Feb. 20, 2023, at 15:10-14, 16:19-24, 46:8-15, 45:4-13, 49:13-25, 58:18-59:6, 26:9-27:3, 29:3-9, 33:11-14, 77:21-25, 86:4-8, "Exhibit A"; *see also* Deposition of Carolyn Ann Brewer, Feb 21, 2023, at 13:5-11, 12:12-23, 14:11-18, 20:13-15, 50:12-14, 58:11-20, 61:4-14, 63:4-6, 63:22-64:3, 66:3-19, 21:14-25, 22:10-15, 84:3-13, 22:23-23:3, 23:19-22, 25:5-14, 25:20-26, 27:3-15, 95:10-22, 101:9-13, "Exhibit C".
[62] *See* Deposition of Michael Brewer, Feb. 20, 2023, at 56:6-16, 57:21-24, 30:19-31:1, 31:19-32, 126:10-17, "Exhibit A"; *see also* Deposition of Carolyn Ann Brewer, Feb 21, 2023, at 11:1-20, 15:25-16, 17:8-24, 19:14-22, 20:5-15, 22:23-23:3, 28:18-29:1, 78:2-12, 84:3-13, 95:10-22, 105:19-106-6, 107:8-24, 109:1-15, 111:11-17, 135:13-22, 141:3-9, 164:19-22, 165:7-11, 170:10-15; "Exhibit C"; *see also* Deposition of Christopher Davis, Feb. 23, 2023, at, 27:16-28:14, 36:4-25, 44:3-15, 79:2-80:12, 112:13-25, 121:4-7, 122:6-25, 124:11-14, 125:15-23, 134:1-5, 166:14-20, "Exhibit F".

decision not to read policy was predicated in part on reliance of the Tobias agent's knowledge of surgery, Plaintiff's need for continuing treatment, and assumption that agent procured policy in conformance with said knowledge.[63] As such, Plaintiff has presented sufficient evidence to overcome the presumption that he knew of the existence and effect of the second policy's pre-existing condition exclusion and a genuine issue of material fact remains to be determined by the fact finder regarding Plaintiff's reliance on Defendant Tobias' representation that the second policy would be a renewal of, and provide the same coverage as, Plaintiff's previous policy.

17. Plaintiff's negligent misrepresentation claim is supported by admissible evidence showing specific facts pertaining to Defendant Tobias' actions providing insurance brokerage services, understanding Plaintiff's insurance requirements, procuring requested coverage, misrepresenting the coverage procured, and the harm that flowed to Plaintiff from the foregoing. Construing all facts Plaintiff's favor, Plaintiff states a valid claim for negligent misrepresentation against Tobias & Associates and Defendant's Motion for Final Summary Judgment should be denied.

**ii. <u>Defendant Tobias Recklessly Misrepresented Coverage Afforded by the Second Policy and Plaintiff's Claims for Fraud and Fraud by Nondisclosure are Supported by Admissible Evidence.</u>**

18. Defendant Tobias argues that Plaintiff's claims for fraud and fraud by non-disclosure should be dismissed on the basis that Defendant Tobias had no duty to disclose any information related to insurance policies, made no affirmative misrepresentation of any kind, and did not act recklessly or with intent to deceive.[64] However, Tobias had a duty to inform Plaintiff that treatment related to his recent surgery would not be covered under the second policy when he made the dual representations that the second policy would be a renewal of, and would provide the same coverage

[63] *See* Deposition of Michael Brewer, Feb. 20, 2023, at 56:6-16, 57:21-24, 30:19-31:1, 31:19-32, 126:10-17, "Exhibit A"; *see also* Deposition of Carolyn Ann Brewer, Feb 21, 2023, at 17:8-24, 18:19-19:13, 19:14-22, 20:5-15, 28:18-29:1, 78:2-12, 79:7-20, 95:10-22, 107:8-24, 165:7-11, 169:11-20, 170:10-15, 111:11-17, "Exhibit C".
[64] *See* Dkt. No. 27 at ¶ 25.

as, the first policy. Further, these representations by Tobias constitute an affirmative misrepresentation. Finally, Tobias' misrepresentations were made recklessly when considering Tobias' knowledge of Plaintiff's recent surgery, need for continuing treatment, and the policy's pre-existing conditions exclusion.

19. "Where there is a duty to speak, silence may be as misleading as a positive misrepresentation of existing facts."[65] Whether a duty to disclose exists is a question of law.[66]

20. In *Hoggett*, the Fourteenth Court of Appeals recognized that a duty to disclose may arise in a commercial context: "A duty to disclose may arise in four situations: (1) when there is a fiduciary relationship; (2) when one voluntarily discloses information, the whole truth must be disclosed; (3) when one makes a representation, new information must be disclosed when that new information makes the earlier representation misleading or untrue; and (4) when one makes a partial disclosure and conveys a false impression."[67]

21. In *Omni,* the Fourteenth Court of Appeals analyzed *Hogget* in the context of an insurance dispute based upon a coverage exclusion provision and found that the *Hoggett* duty to disclose arises where an insurance agent makes a partial disclosure and fails to prevent their partial or ambiguous statement from being misleading.[68] The Fourteenth Court of Appeals found that, under Hoggett scenario three, a failure to disclose or provide additional information regarding a coverage exclusion was misleading given that the insurance agent knew the insured needed and requested specific coverage which was provided under previous policies and which would ultimately be

[65] *Smith v. Nat'l Resort Cmty., Inc.*, 585 S.W.2d 655, 658 (Tex. 1979).
[66] *Bradford v. Vento*, 48 S.W.3d 749, 755, 44 Tex. Sup. J. 655 (Tex. 2001).
[67] *See Hoggett v. Brown*, 971 S.W.2d 472, 487 (Tex. App.—Houston [14th Dist.] 1997, pet. denied)
[68] *See Omni Metals v. Poe & Brown of Tex.*, NO. 14-00-01081-CV, 2002 Tex. App. LEXIS 4334 (Tex. App. June 13, 2002).

uncovered due to the exclusion provision at issue.[69] The Court also found that these facts created a fact issue as to whether the insurance agent defendant met its duty under Hogget scenario four.[70]

22. Further, the Court in *Omni* found that the failure to read the policy was no apparent bar to a claim for misrepresentation and the Plaintiff's failure to read the policy did not support the granting of summary judgment.[71]

23. Here, Defendant Tobias' dual representations that the second policy would be a renewal of, and would provide the same coverage as, the first policy created a duty to inform Plaintiff that ongoing treatment related to his recent surgery would not be covered under the second policy, pursuant to *Hogget* scenarios three and four. As such, Tobias owed a duty to inform Plaintiff that his ongoing treatment would not be covered under the new policy. Tobias' failure to disclose or provide additional information regarding exclusion of coverage for Plaintiff's ongoing treatment constitutes misrepresentation(s) of material fact as it relates to Plaintiff's claims for fraud and fraud by nondisclosure. Tobias' knowledge that Plaintiff's ongoing treatment would not be covered,

---

[69] *See Id. at p. 10* ("Poe & Brown should have revealed the storage fee exclusion to correct impressions made from earlier certificates of insurance. The earliest certificate of insurance, for the 1992-93 bailee policy, contains the following language: 'coverage includes property of others in custody of insured.' Danny Sparks, the insurance agent employed by Poe & Brown at the time of the fire loss, sent this certificate to Omni. The summary judgment evidence also shows that Sparks was aware of the storage fee exclusion by May 1995. Further, he had been questioned about the storage fee exclusion by Port Metal's president, who revealed that Port Metal charged its customers a storage fee. Despite this development, Sparks did not disclose or provide additional information about the storage exclusion to Omni, even when he knew that Omni wanted to make sure that its property was covered by insurance purchased by Port Metal. Thus, Sparks never corrected the impression conveyed by the 1992-93 policy, which was misleading given facts Sparks later learned. Accordingly, we hold that these circumstances create a fact issue on whether appellees breached the duty prescribed under Hoggett's scenario three.")

[70] *See Id.* ""Relying on *Hoggett* scenario four, Omni contends that, under the circumstances, the 'all risk' certificate of insurance was a partial disclosure that conveyed a false impression. We agree. We conclude that the evidence shows Poe & Brown understood it was answering Omni's question, 'Is my property at Port Metal's facility covered?' At that time, Poe & Brown knew that Port Metal wanted to cover all property of its customers, was aware of the storage exclusion in the policy, and knew that Port Metal was charging its customers a storage fee. Despite this knowledge, the certificate of insurance was its only answer, a partial answer, to Omni's question. The certificate verified 'all risk' bailee liability coverage with a $ 3,000,000 limit. In deposition, Poe & Brown's corporate representative admitted that the term 'all risk' did not really cover all possible risks and was possibly confusing. Thus, taken in the light most favorable to Omni, the all risk designation left a false impression under the circumstances. Accordingly, there is a fact issue whether appellees met their duty under *Hoggett* scenario four.")

[71] *See Id. at p. 24.*

coupled with Tobias' knowledge that Plaintiff's ongoing treatment would be covered under an Affordable Care Act compliant policy, makes its misrepresentation reckless under the circumstances.[72]

24. Plaintiff's claims for fraud and fraud by nondisclosure are supported by admissible evidence showing specific facts pertaining to Defendant Tobias' actions providing insurance brokerage services, understanding Plaintiff's insurance requirements, procuring requested coverage, misrepresenting the coverage procured, and the harm that flowed to Plaintiff from the foregoing. Construing all facts Plaintiff's favor, Plaintiff states valid claims for fraud and fraud by nondisclosure against Tobias & Associates and Defendant's Motion for Final Summary Judgment should be denied.

### iii. <u>Defendant Tobias' Misrepresentations Violate the Texas Deceptive Trade Practices Act.</u>

25. Defendant Tobias argues that Plaintiff's claims for violation of the Texas Deceptive Trade Practices Act ("DTPA") should be dismissed on the basis that there is no evidence that Defendant Tobias ever made any misrepresentation, and that Tobias had no duty to disclose information related to the exclusion at issue.[73] However, Defendant Tobias' representations that the second policy would be a renewal of, and would provide the same coverage as, the first policy, coupled with Tobias' knowledge of Plaintiff's need for coverage of ongoing treatment related to his recent surgery, constitute false, misleading, and deceptive acts which are a producing cause of Plaintiff's damages. Moreover, the duty set forth in *May* is irrelevant to a "failure to disclosure" analysis under the DTPA.

---

[72] See *Landers v. Aurora Loan Services, LLC,* 434 S.W.3d 291 (Tex. App.—Texarkana 2014, no pet.*)("*Recklessness may be inferred from surrounding circumstances, existing either before or after a representation is made. But the recklessness must be that of the person making the alleged misrepresentation."); *see also* Deposition of Christopher Davis, Feb. 23, 2023, at 58:15-21, 59:15-25, "Exhibit F".
[73] *See* Dkt. No. 27 at ¶ 25.

a. Misrepresentations Constituting Violations of the DTPA.

26. The misrepresentation(s) of Defendant Tobias & Associates are discussed at length in Sections III(C)(i)-(ii), *supra.* Plaintiff hereby incorporates those discussions into this sub-section for brevity.

27. Texas Courts have found the "failure to read" defense inapplicable to a misrepresentation claim under the DTPA and the Texas Insurance Code.[74]

28. Defendant Tobias & Associates violated Sections 17.46(b)(5), (7), & (12) by representing to Plaintiff that the second policy would be a renewal of, and provide the same coverage as, Plaintiff's previous policy when Tobias knew the treatment related to Plaintiff's recent surgery would not be covered under the policy procured but would be covered under an available ACA compliant plan.[75]

29. Section 17.46(b)(5) of the DTPA prohibits a business from representing to a consumer that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not.[76] Defendant Tobias misrepresented that the second policy

---

[74] *See Wyly v. Integrity Ins. Sols*., 502 S.W.3d 901, 911, 912 (Tex. App. 2016) ("Based upon the authorities discussed above, we decline to hold the defense of "failure to read" is applicable to alleged violations under the DTPA or the Insurance Code for an affirmative misrepresentation of coverage.") ("The *Manion* court's application of the "deemed to know" rule in the absence of an affirmative misrepresentation is not inconsistent with our determination above that "failure to read" is not a defense to a claim for an affirmative misrepresentation that violates the DTPA or the Insurance Code.") ("In this case, appellant's uncontested affidavit avers that he relied upon Geisler to provide the coverage he requested and believed, from Geisler's answers to his questions about coverage, that Geisler had read the policy. As the evidence set forth above demonstrates, even though he never read the policy, Geisler also believed that he had given appellant a policy with the requested amount of coverage. Appellant's failure to read the policy does not preclude his claims under the DTPA or the Insurance Code. Because appellant's claims are for alleged violations under the DTPA and the Insurance Code based upon an affirmative misrepresentation of coverage, the trial court could not have properly granted summary judgment on the basis that appellant was deemed to know the contents of the policy.")

[75] *See* Deposition of Carolyn Ann Brewer, Feb 21, 2023, at 15:25-16, 17:8-24, 19:14-22, 28:18-29:1, 30:6-23, 78:2-12, 79:7-20, 105:19-106-6, 107:8-24, 170:10-15, "Exhibit C"; *see also* Deposition of Christopher Davis, Feb. 23, 2023, at 58:15-21, 59:15-25, 112:13-25, 120:13-22, 121:4-7, 122:6-25, 124:11-14, 125:15-23, 131:6-18, 166:14-20, "Exhibit F".

[76] *See* Tex. Bus. Comm. Code § 17.46(b)(5).

would have characteristics, uses, and benefits which it did not have when he stated that the second policy would be a renewal of the first policy, which covered Plaintiff's cancer treatments. Defendant Tobias further misrepresented the characteristics, uses, and benefits of the second policy by stating that it would provide the same coverage as the first policy. This representation was in fact false as evidenced by the coverage of Plaintiff's cancer treatments under the first policy and the denial of Plaintiff's cancer treatments under the second policy. This representation was made with the intention that Plaintiff act upon it by purchasing a policy which would not cover life sustaining treatment which was known to be needed at the time the representation was made. Plaintiff relied upon this affirmative misrepresentation to his detriment by purchasing a policy which did not cover his cancer treatments when an ACA compliant plan was available which would have covered his foreseeable treatment.

30. Section 17.46(b)(7) of the DTPA prohibits a business from representing to a consumer that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.[77] Defendant Tobias & Associates violated Section 17.46(b)(7) by representing to Plaintiff that the second policy would be a renewal of the first policy when it was not a renewal which would provide continuation of coverage from one policy to the next. This affirmative misrepresentation and Golden Rule Insurance Company's coverage of life sustaining cancer treatments under the first policy reasonably misled Plaintiff to believe that the second policy would provide coverage for these treatments. This misrepresentation, made to induce Plaintiff to pay premiums on an ineffective policy, was relied upon by Plaintiff to his detriment and is a proximate cause of Plaintiff's damages.

---

[77] *See* Tex. Bus. Comm. Code § 17.46(b)(7).

31. Section 17.46(b)(12) of the DTPA prohibits a business from representing to a consumer that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law.[78] Defendant Tobias & Associates violated Section 17.46(b)(12) by representing to Plaintiff that the second policy would be a renewal of, and provide the same coverage as, the first policy when the second policy was not a renewal which would provide continuation of coverage from one policy to the next. This affirmative misrepresentation mislead Plaintiff into believing that he had purchased a policy which would provide coverage for treatments related to his recent surgery. Defendant Tobias' misrepresentations were deceptive, false, and misleading to its consumer, Plaintiff Michael Brewer and constitute violations of the DTPA.[79]

b. Failures to Disclose Constituting Violations of the DTPA.

32. Defendant Tobias asserts that Plaintiff's claim for violation of Section 17.46(b)(24) of the DTPA should be dismissed because Tobias was under no duty to disclose the plain language of the policy.[80] However, Section 17.46(b)(24) does not import any common-law duty into its language or construction and specifically states when non-disclosure constitutes violation of the DTPA. Section 17.46(b)(24) prohibits a business from "failing to disclose information concerning goods or services which was known at the time of the transaction *if such failure to disclose such*

[78] *See* Tex. Bus. Comm. Code § 17.46(b)(12).

[79] *See Royal Globe Ins. Co. v. Bar Consultants, Inc.*, 577 S.W.2d 688, 693–694 (Tex. 1979) (Insurance company's agent (Embrey) assured Barber (insured) that insured was "totally covered" from vandalism losses when Insured purchased policy. After phoning in a claim Embrey's secretary told Barber to go ahead and have damage repaired. Later, claim was denied. Insured sued for treble damages, attorney's fees and return of premiums because, if in fact the policy did not cover such damage, then such representations and policy terms were false, deceptive, and misleading, in violation of article 21.21, section 4(1), Insurance Code, and section 17.46(a) of the DTPA. The Texas Supreme Court confirmed the award of treble damages plus attorney's fees in favor of the insured. It held that a misrepresentation about coverage afforded by a policy of insurance, made by the insurance company's local recording agent, was a deceptive trade practice under Texas statutes.); *see also Brown & Brown of Tex., Inc. v. Omni Metals, Inc.*, 317 S.W.3d 361, 384–398 (Tex. App.—Houston [1st Dist.] 2010).

[80] *See* Dkt. No. 27 at ¶ 39.

*information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed*."[81]

33. Here, Plaintiff would not have purchased the second policy if he had known the second policy would did not cover treatment related to his recent surgery.[82] Defendant Tobias misled Plaintiff into believing that the second policy was a renewal of, and would cover the same treatments as, the first policy.[83] Defendant Tobias did not inform Plaintiff that treatment related to his recent surgery would not be covered under the second policy.[84] Tobias did not inform Plaintiff that the second policy would not be a renewal of the first policy and would not provide continuation of coverage from one policy to the next.[85] Finally, Tobias' non-disclosure and affirmative misrepresentations were intended to induce Plaintiff into purchasing the second policy. As such, Tobias' non-disclosure was intended to induce Plaintiff into a transaction which Brewer would not made had Tobias disclosed the non-renewal and relevant limitations in coverage. Defendant Tobias' non-disclosure was deceptive and misleading to its consumer, Plaintiff Michael Brewer and constitute violations of the DTPA.[86]

c. Causing Confusion as to Approval Constituting Violations of the DTPA.

---

[81] *See* Tex. Bus. Comm. Code § 17.46(b)(24) (*emphasis added*).

[82] *See* Deposition of Michael Brewer, Feb. 20, 2023, at, 56:6-16, 57:21-24, 30:19-31:1, 31:19-32:10, "Exhibit A"; *See* Deposition of Carolyn Ann Brewer, Feb 21, 2023, at 17:8-24, 17:25-18:15, 18:19-19:13, 8:18-29:1, 78:2-12, 79:7-20, 105:19-106-6, 107:8-24, 164:19-22, 169:11-20, 170:10-15, "Exhibit C"; see also Deposition of Christopher Davis, Feb. 23, 2023, at 27:16-28:14, 79:2-80:12, "Exhibit F".

[83] *See* Deposition of Carolyn Ann Brewer, Feb 21, 2023, at 28:18-29:1, 15:25-16, 17:8-24, 17:25-18:15, 18:19-19:13, 19:14-22, 30:6-23, 78:2-12, 79:7-20, 105:19-106-6, 107:8-24, 164:19-22, 169:11-20, 170:10-15, "Exhibit C"; *see also* Deposition of Michael Brewer, Feb. 20, 2023, at 56:6-16, 57:21-24, 31:19-32:10, 126:10-17, "Exhibit A"; see also Deposition of Christopher Davis, Feb. 23, 2023, at 112:13-25, 121:4-7, 122:6-25, 166:14-20, "Exhibit F".

[84] *See Id.*

[85] *See Id.*

[86] *See Garrison Contractors, Inc. v. Liberty Mut. Ins. Co.,* 927 S.W.2d 296, 300 (Tex. App.—El Paso 1996), aff'd, 966 S.W.2d 482 (Tex. 1998) (Court, in analyzing argument that all of the insured's alleged misrepresentations constituting its DTPA and Insurance Code claims were barred because the terms of the policy contradicted each alleged misrepresentation, found the allegation that "an affirmative misrepresentation about the meaning of one of the terms of the Policy" raised a fact issue "sufficient to defeat the summary judgment against [the insured] on its DTPA and Insurance Code counterclaims."); *see also Rice v. Metro. Life Ins. Co*., 324 S.W.3d 660, 674-75 (Tex. App.—Fort Worth 2010, no pet.) (In Rice, having already recognized the policy informed the beneficiary that coverage ended upon her retirement, the court agreed there was a fact issue about whether MetLife misrepresented the terms of Glenda's original insurance policy precluding summary judgment on the DTPA and Insurance Code claims.)

34. Defendant Tobias asserts that Plaintiff's claim for violation of Section 17.46(b)(2) of the DTPA should be dismissed because Plaintiff does not specify how Tobias cause confusion about the approval of the second policy.[87] However, Defendant Tobias caused Plaintiff to become confused regarding Golden Rule Insurance Company's approval of a "renewal" of Plaintiff's first policy when Tobias represented that the second policy would be a renewal of, and provide the same coverage as, the first policy. Tobias' affirmative misrepresentation that the second policy would be a "renewal" of the first policy reasonably misleads the audience of the statement into believing that Golden Rule Insurance Company approved a renewal of the first policy which would provide continuation of coverage from one policy to the next when in fact it did not. Defendant Tobias' acts in causing Plaintiff confusion as to the approval of a "renewal" was deceptive and misleading to its consumer, Plaintiff Michael Brewer, and Tobias' actions and omissions constitute violations of the DTPA.

d. False Advertising Constituting Violations of the DTPA.

35. Defendant Tobias further asserts that Plaintiff's claim for violation of Section 17.46(b)(9) of the DTPA should be dismissed because Plaintiff proffers no evidence that Tobias advertised this specific plan to the public, that Plaintiff saw or relied on such advertising, or that the advertising was false or deceptive.[88] However, Defendant Tobias sent Plaintiff a solicitation email which stated three separate times that Plaintiff's policy could be renewed and specifically stated that "If [Mr. Brewer] would like to renew [his] current plan at the same level of coverage, [Christopher Davis] can resend the electronic signature via text or email."[89]

---

[87] *See* Dkt. No. 27 at ¶ 39.
[88] *See* Dkt. No. 27 at ¶ 39.
[89] *See* November 3, 2021 Email from Christopher Davis Soliciting a Renewal of Mr. Brewer's Policy. "Exhibit B".

36. Section 17.46(b)(9) prohibits a business from advertising goods or services with intent not to sell them as advertised.[90] Defendant Tobias' November 3, 2021 advertisement offering to "renew" Plaintiff's current plan at the same level of coverage was made with the knowledge that Plaintiff's first policy could not be "renewed" and with the intent to sell a new policy to Plaintiff which was not a renewal of the first policy which would provide continuation of coverage from one policy to the next. Defendant Tobias' false advertising was deceptive, false, and misleading to its consumer, Plaintiff Michael Brewer, and constitutes violation of the DTPA.

37. Defendant Tobias & Associates violated Sections 17.46(b)(2), (5), (7), (9), (12), & (24) by representing to Plaintiff that the second policy would be a renewal of, and provide the same coverage as, Plaintiff's previous policy when Tobias knew the treatment related to Plaintiff's recent surgery would not be covered under the policy procured but would have been covered under an available ACA compliant plan. Plaintiff's claims for violation of the DTPA are supported by admissible evidence showing specific facts pertaining to Defendant Tobias' actions in providing insurance brokerage services, understanding Plaintiff's insurance requirements, procuring requested coverage, misrepresenting the coverage procured, and the harm that flowed to Plaintiff from the foregoing. Construing all facts Plaintiff's favor, Plaintiff states valid claims for violation of the DTPA against Tobias & Associates and Defendant's Motion for Final Summary Judgment should be denied.

**iv. <u>Violation of the Texas Insurance Code.</u>**

38. Defendant Tobias argues that Plaintiff's claims for violation of the Texas Insurance Code ("Tex. Ins. Code") should be dismissed on the basis that Tobias did not make any misrepresentation(s) to Plaintiff which would cause him to believe that treatment related to his

[90] *See* Tex. Bus. Comm. Code § 17.46(b)(9).

recent surgery would be covered under the second policy, Tobias had no duty to disclose absent an affirmative misrepresentation, and Plaintiff signed a GRIC document explaining coverage related to the second policy.[91]

a. <u>Misrepresentations Constituting Violations of the Tex. Ins. Code.</u>

39. The misrepresentation(s) of Defendant Tobias & Associates are discussed at length in Sections III(C)(i)-(iii), *supra.* Plaintiff hereby incorporates those discussions into this sub-section for brevity.

40. Texas Courts have found the "failure to read" defense inapplicable to a misrepresentation claim under the DTPA and the Texas Insurance Code.[92]

41. Defendant Tobias & Associates violated Sections 541.051, 541.052, 541.060, 542.003 by representing to Plaintiff that the second policy would be a renewal of, and provide the same coverage as, Plaintiff's previous policy when Tobias knew the treatment related to Plaintiff's recent surgery would not be covered under the policy procured but would be covered under an available ACA compliant plan.[93]

42. Defendant Tobias Argues that Plaintiff's claims in this regard must fail because Tobias made no affirmative, specific misrepresentations to Plaintiff regarding any aspect of coverage.[94]

---

[91] *See* Dkt. No. 27 at ¶ 44-48.

[92] *See Wyly v. Integrity Ins. Sols*., 502 S.W.3d 901, 911, 912 (Tex. App. 2016) ("Based upon the authorities discussed above, we decline to hold the defense of "failure to read" is applicable to alleged violations under the DTPA or the Insurance Code for an affirmative misrepresentation of coverage.") ("The *Manion* court's application of the "deemed to know" rule in the absence of an affirmative misrepresentation is not inconsistent with our determination above that "failure to read" is not a defense to a claim for an affirmative misrepresentation that violates the DTPA or the Insurance Code.") ("In this case, appellant's uncontested affidavit avers that he relied upon Geisler to provide the coverage he requested and believed, from Geisler's answers to his questions about coverage, that Geisler had read the policy. As the evidence set forth above demonstrates, even though he never read the policy, Geisler also believed that he had given appellant a policy with the requested amount of coverage. Appellant's failure to read the policy does not preclude his claims under the DTPA or the Insurance Code. Because appellant's claims are for alleged violations under the DTPA and the Insurance Code based upon an affirmative misrepresentation of coverage, the trial court could not have properly granted summary judgment on the basis that appellant was deemed to know the contents of the policy.

[93] *See*

[94] *See* Dkt. No. 27 at ¶ 44.

However, Tobias made affirmative material misrepresentations of fact when it stated to Plaintiff that his first policy could be renewed and that the second policy would be a renewal of, and provide the same coverage as, the first policy.[95] This affirmative misrepresentation mislead Plaintiff into believing that he had purchased a policy which would provide coverage for treatments related to his recent surgery. Those representations were false[96], and Defendant knew, or should have known, that such statements were false at the time such statements were made.[97] Defendant made those misrepresentations with the intent that Plaintiffs act on it, and Plaintiffs did indeed act on such representations by timely paying premiums, upon which Defendant Tobias received payment.[98] Defendant Tobias & Associates had a duty to accurately advertise and represent insurance products in soliciting and processing insurance applications on Plaintiff's behalf.[99] Defendant Tobias' misrepresentations were unfair, deceptive, false, and misleading to its consumer, Plaintiff Michael Brewer, and constitute violations of the Tex. Ins. Code.

b. Failures to Disclose Constituting Violations of the Tex. Ins. Code.

43. Defendant Tobias asserts that Plaintiff's claim for violation of Sections 541.061(2), 541.061(3), and 541.61(5) of the Tex. Ins. Code should be dismissed because Tobias had no duty to disclose absent an affirmative misrepresentation.[100] However, Defendant Tobias made

[95] *See* Deposition of Carolyn Ann Brewer, Feb 21, 2023, at 15:25-16, 17:8-24, 17:25-18:15, 18:19-19:13, 19:14-22, 28:18-29:1, 30:6-23, 78:2-12, 79:7-20, 105:19-106-6, 107:8-24; 109:1-15, 165:7-11, 169:11-20, 170:10-15, "Exhibit C"; *see also* Deposition of Christopher Davis, Feb. 23, 2023, at 112:13-25, 166:14-20, "Exhibit F'.
[96] *See* Deposition of Christopher Davis, Feb. 23, 2023, at 58:15-21, 59:15-25, "Exhibit F'; *see also* Deposition of Carolyn Ann Brewer, Feb 21, 2023, at 135:13-22, 141:3-9, d. 153:3-9, "Exhibit C".
[97] *See* Deposition of Christopher Davis, Feb. 23, 2023, at 58:15-21, 59:15-25, "Exhibit F".
[98] *See* Deposition of Michael Brewer, Feb. 20, 2023, at 56:6-16, 57:21-24, 30:19-31:1, 31:19-32, 126:10-17, "Exhibit A"; *see also* Deposition of Carolyn Ann Brewer, Feb 21, 2023, at 28:18-29:1 15:25-16, 17:8-24, 17:25-18:15, 18:19-19:13, 19:14-22, 20:5-15, 22:23-23:3, 23:19-22, 25:5-14, 25:20-26, 27:3-15, 30:6-23, 78:2-12, 79:7-20, 101:9-13, 105:19-106-6, 107:8-24, 109:1-15, 111:11-17, 135:13-22, 141:3-9, 153:3-9, 164:19-22, 165:7-11; 169:11-20; 170:10-15, "Exhibit C"; *see also* Deposition of Christopher Davis, Feb. 23, 2023, at 27:16-28:14, 36:4-25, 44:3-15, 79:2-80:12, 97:7-12, 98:7-9, 98:13-18, 99:5-13, 103:4-6, 112:13-25, 122:6-25; 166:14-20, "Exhibit F".
[99] *See* Tex. Ins. Code §§ 541.051, 541.052, 541.060, 542.003
[100] *See* Dkt. No. 27 at ¶ 46.

affirmative misrepresentations which are reasonably misleading in light of its non-disclosure of material facts.

44. Section 541.061(2) of the Tex. Ins. Code provides that it is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to misrepresent an insurance policy by failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made.[101] Also relevant, Section 541.061(3) of the Tex. Ins. Code provides that it is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to make a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact.

45. Tobias made affirmative material misrepresentations of fact when it stated to Plaintiff that his first policy could be renewed and that the second policy would be a renewal of, and provide the same coverage as, the first policy.[102] Furthermore, Defendant Tobias, failed to disclose at any point, that the second policy would not be a renewal of the first policy and that Plaintiff's ongoing treatment related to his recent surgery would not be covered under the second policy.[103] In light of the affirmative misrepresentation made by Defendant Tobias, Defendant's failure to disclose made its previous representation that the second policy would be a renewal of, and provide the same coverage as, Plaintiff's previous policy misleading under the circumstances.[104]

---

[101] *See* Tex. Ins. Code § 541.061(2)

[102] *See* Deposition of Carolyn Ann Brewer, Feb 21, 2023, at 15:25-16, 17:8-24, 17:25-18:15, 18:19-19:13, 19:14-22, 28:18-29:1, 30:6-23, 78:2-12, 79:7-20, 105:19-106-6, 107:8-24; 109:1-15, 165:7-11, 169:11-20, 170:10-15, "Exhibit C"; *see also* Deposition of Christopher Davis, Feb. 23, 2023, at 112:13-25, 166:14-20, "Exhibit F'.

[103] *See* Deposition of Carolyn Ann Brewer, Feb 21, 2023, at28:18-29:1, 17:25-18:15, 18:19-19:13, 19:14-22, 30:6-23, 78:2-12, 79:7-20, 105:19-106-6, 107:8-24, 164:19-22, 169:11-20, 170:10-15, "Exhibit C'; *see also* Deposition of Michael Brewer, Feb. 20, 2023, at 15:15-23, 31:19-32; 56:6-16, 57:21-24, 126:10-17, "Exhibit A"; *see also* Deposition of Christopher Davis, Feb. 23, 2023, at 112:13-25, 122:6-25, 131:6-18, 134:1-5, 166:14-20, "Exhibit F".

[104] *See Colonial County Mut. Ins. Co. v. Valdez*, 30 S.W.3d 514, 521 (Tex. App.—Corpus Christi 2000, no pet.) (holding failure to state that transfer of title would void coverage by insurance agent would have misled a reasonably prudent person to the false conclusion that coverage would apply after transfer and that failure to disclose the exclusion gives rise to liability under the Texas Insurance Code.)

46. Also, Section 541.061(5) of the Tex. Ins. Code provides that it is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to misrepresent an insurance policy by failing to disclose a matter required by law to be disclosed, including failing to make a disclosure in accordance with another provision of this code.[105] Section 541.086 requires an advertisement for a guaranteed renewable accident and health insurance policy to include a statement indicating the rates for the policy may change if the advertisement suggests or implies that the rates for the product will not change.[106] Defendant Tobias' false advertisement offering to "renew" Plaintiff's first policy at the same level of coverage did not contain the statements required by Section 541.086 and thus constitute a violation of Section 541.061(5).

47. Defendant Tobias does not provide argument related to Plaintiff's claims pursuant to Tex. Ins. Code §§ 541.061(1), (4) and Defendant is unentitled to summary judgment on those claims. Defendant Tobias' misrepresentations and non-disclosure were unfair, deceptive, false, and misleading to its consumer, Plaintiff Michael Brewer, and constitute violations of the Tex. Ins. Code.

48. Finally, Defendant Tobias & Associates asserts that Plaintiff's claims for violation of the Tex. Ins. Code should be dismissed on the basis that Plaintiff signed documents explaining the coverage afforded by the second policy.[107] What Defendant Tobias does not disclose is that the documents signed by Plaintiff were sent by Golden Rule Insurance Company and not Defendant Tobias & Associates.[108] As Defendant Tobias admits, Plaintiff did not read the second policy or the documents explaining coverage.[109] Plaintiff's failure to read the terms of the second policy

---

[105] *See* Tex. Ins. Code § 541.061(5)
[106] *See* Tex. Ins. Code § 541.084(a).
[107] *See* Dkt. No. 27 at ¶ 48.
[108] S*ee* Deposition of Michael Brewer, Feb. 20, 2023, at 53:25-54:7, "Exhibit A".
[109] *See* Dkt. No. 27 at ¶ 13.

were premised on his reliance upon the statements made by Tobias' employee/representative Christopher Davis in misrepresenting the second policy as a renewal of the previous policy which would offer the same coverage[110] along with the fact that Plaintiff never received a copy of the policy itself.[111] As Defendant Tobias made material misrepresentations of fact and did not disclose, either verbally or in writing, limitations of coverage related to Plaintiff's recent surgery and the inability to renew Plaintiff's policy to provide a continuation of coverage, Defendant cannot rely upon the "failure to read" defense.

49. Defendant Tobias & Associates violated Sections 541.051, 541.052, 541.060, 541.061, and 542.003 of the Tex. Ins. Code by representing to Plaintiff that the second policy would be a renewal of, and provide the same coverage as, Plaintiff's previous policy while Tobias knew the treatment related to Plaintiff's recent surgery would not be covered under the policy procured but would have been covered under an available ACA compliant plan. Plaintiff's claims for violation of the Tex. Ins. Code are supported by admissible evidence showing specific facts pertaining to Defendant Tobias' actions in providing insurance brokerage services, understanding Plaintiff's insurance requirements, procuring requested coverage, misrepresenting the coverage procured, and the harm that flowed to Plaintiff from the foregoing. Construing all facts Plaintiff's favor, Plaintiff states valid claims for violation of the Tex. Ins. Code against Tobias & Associates and Defendant's Motion for Final Summary Judgment should be denied.

---

[110] *See* Deposition of Carolyn Ann Brewer, Feb 21, 2023, at 15:25-16, 17:8-24, 17:25-18:15, 18:19-19:13, 19:14-22, 20:5-15, 22:23-23:3, 23:19-22, 25:5-14, 25:20-26, 27:3-15, 28:18-29:1, 30:6-23, 78:2-12, 79:7-20, 101:9-13, 105:19-106-6, 107:8-24; 109:1-15, 111:11-17, 135:13-22, 141:3-9, 165:7-11, 170:10-15, "Exhibit C"; *see also* Deposition of Christopher Davis, Feb. 23, 2023, at 27:16-28:14, 36:4-25, 44:3-15, 79:2-80:12, 112:13-25, 122:6-25; 166:14-20, "Exhibit F"; *see also* Deposition of Michael Brewer, Feb. 20, 2023, at 56:6-16, 57:21-24, 30:19-31:1, 31:19-32, 126:10-17, "Exhibit A".

[111] *See* Deposition of Carolyn Ann Brewer, Feb 21, 2023, at 21:14-25, 22:10-15, 22:23-23:3, 84:3-13, 22:23-23:3, 23:19-22, 25:5-14, 25:20-26, 27:3-15, 63:22-64:3, 95:10-22, 101:9-13, 111:11-17, "Exhibit C"; *see also* Deposition of Michael Brewer, Feb. 20, 2023, at 26:9-27:3, 29:3-9, 77:21-25, 86:4-8, "Exhibit A".

**v. Plaintiff has Asserted Valid Underlying Torts to Support His Claims for Civil Conspiracy.**

50. Defendant Tobias & Associates argues that Plaintiff's claims for civil conspiracy should be dismissed on the basis that Tobias did not commit an underlying tort necessary for the basis of a civil conspiracy Charge.[112] As shown above, Plaintiff has asserted valid claims for common-law fraud, fraud by nondisclosure, negligent misrepresentation, violations of the Texas Insurance Code, and violations of the Texas Deceptive Trade Practices Act. Defendant Tobias' assertion that it did not commit any underlying tort is incorrect and Defendant's Motion for Final Summary Judgment should be denied.

**vi. Plaintiff's Claims for Promissory Estoppel and Breach of Duty of Good Faith and Fair Dealing Are Not Asserted Against Defendant Tobias & Associates.**

51. While Plaintiff disputes Defendant Tobias' assertion that Tobias failed to make any "promise" to Plaintiff, Plaintiff does not seek injunctive relief by way of enforcement of the policy against Defendant Golden Rule Insurance Company under a promissory estoppel theory. Likewise, Plaintiff's claims for breach of the duty of good faith and fair dealing are not asserted against Defendant Tobias & Associates.

## IV. PRAYER

For the above reasons, Plaintiff prays this Court deny Defendants Motion for Summary Judgment and allow this case to proceed to trial. Plaintiff seeks all relief requested herein and additionally requests any other or further relief to which he may be justly entitled.

*<signatures on next page>*

[112] *See* Dkt. No. 27 at ¶ 33.

Respectfully submitted,


**THE COBOS LAW FIRM**

By: */s/ Nicholas G. Kacal*__
Andrew J. Cobos
State Bar No. 24078352
Nicholas Kacal
State Bar No. 24123106
711 W. Alabama St.
Houston, Texas 77006
Telephone: (713) 234-5860
Facsimile: (713) 234-5860
andrew@cobos.law
nicholas@cobos.law

**ATTORNEYS FOR PLAINTIFF**


## CERTIFICATE OF SERVICE

I hereby certify that on the 31st day of July, 2023, a true and correct copy of the foregoing document was served on all counsel of record via the Court's CM/ECF system in accordance with the Federal Rules of Civil Procedure. .

*/s/ Nicholas G Kacal*
Nicholas G Kacal

## APPENDIX

A. Deposition of Michael Brewer, Feb. 20, 2023, “Exhibit A”;
B. Christopher Davis Email Soliciting Renewal of Brewer Policy, Nov. 3, 2021, “Exhibit B”;
C. Deposition of Carolyn Ann Brewer, Feb 21, 2023, at 78:17-80:12, “Exhibit C”;
D. Golden Rule Insurance Company Explanation of Benefits to Michael Brewer, December 2021, “Exhibit D”;
E. Golden Rule Insurance Company Denial Letter, Jan. 25, 2022, “Exhibit E”;
F. Deposition of Christopher Davis, Feb. 23, 2023, at 120:13-22, 121:4-7, 122:6-25, 124:24-125:3, 166:14-20, “Exhibit F”;
G. MD Anderson Cancer Center Billing Summary, Dec. 1, 2021 through Oct. 20, 2022, “Exhibit G”;
H. MD Anderson Cancer Center Summary by Account Detail, Dec. 1, 2021 through Dec. 30, 2022, “Exhibit H”;